Harold E. BAILEY, Claimant–Appellant,

v.

Togo D. WEST, Jr., Secretary of Veterans Affairs, Respondent–Appellee.

No. 98–7001.

United States Court of Appeals, Federal Circuit.

Nov. 9, 1998.

Kenneth M. Carpenter, Carpenter, Chartered, Topeka, Kansas, argued for claimant-appellant.

Rodger D. Citron, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, argued for respondent-appellee. On the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Anthony H. Anikeeff, Assistant Director. Of counsel on the brief were Donald E. Zeglin, Deputy Assistant General Counsel, and David J. Barrans, Staff Attorney.

Before MAYER, Chief Judge, RICH, NEWMAN, MICHEL, PLAGER, LOURIE, CLEVENGER, RADER, SCHALL, BRYSON, and GAJARSA, Circuit Judges.

Opinion for the court filed by Chief Judge MAYER, in which Circuit Judges RICH, NEWMAN, PLAGER, CLEVENGER and GAJARSA join. Opinion concurring in result filed by Circuit Judge MICHEL. Dissenting opinion filed by Circuit Judge BRYSON, in which Circuit Judges LOURIE, RADER and SCHALL join.

MAYER, Chief Judge.

Harold E. Bailey appeals the judgment of the United States Court of Veterans Appeals dismissing his appeal for lack of jurisdiction.

*Bailey v. Gober,* 10 Vet.App. 453 (1997). We reverse and remand.

### Background

The parties do not dispute the facts underlying this case. Bailey sought a service connection to his chronic acquired pulmonary disorder. The Department of Veterans Affairs (DVA) denied his request. Bailey appealed this decision to the Board of Veterans' Appeals (BVA), which denied his request to reopen his previously denied claim for failure to submit new and material evidence. The board mailed copies of its denial to Bailey and to his representative, the American Legion, on August 8, 1996. This decision contains the following notice of appellate rights:

> Under 38 U.S.C.A. § 7266, a decision of the Board of Veterans' Appeals granting less than the complete benefit, or benefits, sought on appeal is appealable to the United States Court of Veterans Appeals within 120 days from the date of mailing of notice of the decision, provided that a Notice of Disagreement concerning an issue which was before the Board was filed with the agency of original jurisdiction on or after November 18, 1988. The date which appears on the face of this decision constitutes the date of mailing and the copy of this decision which you have received is your notice of the action taken on your appeal by the Board of Veterans' Appeals.

(Internal citations omitted). Along with this notice, the board also sent Bailey a general appeal notice, which states:

> If the decision is not favorable to you: ... (2) You may have the right to appeal this decision to the United States Court of Veterans Appeals (the Court). You may appeal to the Court a final decision of the BVA that follows a notice of disagreement filed on or after November 18, 1988. A Notice of Appeal must be filed with the Court within 120 days from the date of mailing of the notice of the BVA decision. The date of mailing is the date that appears on the face of the BVA decision. The Court's address is: The United States Court of Veterans Appeals, 625 Indiana Avenue, N.W., Suite 900, Washington, DC 20004.

Bailey went to the Department of Veterans Affairs' Regional Office in Huntington, West Virginia, to inquire about his options. He claims he "was told there was nothing else [he] could do about [his] claim, unless [he] would talk to an Attorney, who was located in Fairmont, W. Va., which is about 200 miles from where [he] live[s]." Upon later learning that he could appeal his case without an attorney, Bailey returned to the Huntington Regional Office on December 3, 1996—117 days after having received the board's decision. He met with a Veterans Benefits Counselor, who filled out a Form 21–4138 so that he could appeal the board's decision. Bailey signed the form and says that he was told by the counselor that this form would get his appeal started and that she would take care of it.

On January 7, 1997, the department sent Bailey a letter, which states in relevant part:

> This is in reference to the VA Form 21–4138 you submitted on December 3, 1996.
>
> You had the right to appeal the decision, concerning your lung condition, to the United States Court of Veterans Appeals (the Court). You could have appealed to the Court a final decision of the BVA that follows a notice of disagreement filed on or after November 18, 1988. A Notice of Appeal must be filed with the Court within 120 days from the date of mailing of the notice of the BVA decision. The date of mailing is the date that appears on the face of the BVA decision.
>
> You had 120 days from August 9, 1996 to appeal BVA's decision. Since that time has expired you must now submit new and material evidence to reopen your claim.

Bailey replied the next day with a letter stating:

> In reply to the enclosed letter I received from you about an appeal of my case, the following is submitted. I understand I had 120 days for an appeal and the date was from 8 August 1996. I came to the Department of Veterans Affairs on 3 December 1996 and someone there filled out a Form 21–4138 for an appeal and I signed it that same day.
>
> From 8 August 1996 to 3 December 1996 is 118 days, that would be 2 days before the 120 days would expire.

Please advise, so I will know what action to take.

Your own letter admits to the dates, and I have counted several times and come up with 118 days.

On January 23, 1997, the department responded in relevant part: "If you did not file an appeal with [CVA] within 120 days, the BVA decision is final. Filing of an appeal at the VA Regional Office does not protect your right of appeal."

Two days later, Bailey filed a Notice of Appeal from the board's August 8, 1996 decision. The Court of Veterans Appeals received this notice outside of the 120 day period set forth in section 7266. On February 7, 1997, the Regional Office sent Bailey a letter stating:

A review of the records of the Department of Veterans Affairs shows that you visited the Huntington VA Regional Office on December 3, 1996. Our Veterans Benefits Counselor assisted you in executing an appeal of your claim to the Court of Veterans Appeals, which had to be received by the Court by December 6, 1996. This document was mistakenly retained at the Huntington Regional Office and attached to your claims file for action.

On February 12, 1997, Bailey filed a Supplemental Notice of Appeal and attached to it the Regional Office's February 7, 1997, letter to explain the untimeliness of this new appeal. The Secretary moved to dismiss Bailey's appeal for lack of jurisdiction. The court granted the Secretary's motion on August 5, 1997, stating:

This Court has held that equitable considerations normally considered a sufficient basis for judicial extension of a filing deadline where private litigants are involved, *see Irwin v. Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), *reh'g denied sub nom. Irwin v. Dept. of Veterans Affairs*, 498 U.S. 1075, 111 S.Ct. 805, 112 L.Ed.2d 865 (1991), are not available in this Court to provide any relief in the case of an untimely filed [Notice of Appeal].

*Bailey v. Gober*, 10 Vet.App. at 454. A judge-requested en-banc consideration of the issues of equitable tolling and extraordinary relief was denied by order on the same day,

over two dissents. Bailey timely appealed the court's order on September 26, 1997, by filing a notice of appeal with the Office of the Clerk of the Court of Veterans Appeals. The sole question on appeal is whether the 120 day time limit set forth in 38 U.S.C. § 7266(a) (1994) is subject to the doctrine of equitable tolling.

### Discussion

■ Our jurisdiction to review decisions of the Court of Veterans Appeals is limited to consideration of "the validity of any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the Court in making the decision." 38 U.S.C. § 7292(c),(d) (1994). Because our review of this decision involves a question of statutory interpretation—namely the ability of the Court of Veterans Appeals to equitably toll a particular statutory time limit and thereby exercise jurisdiction over a late-filed notice of appeal—we have jurisdiction over this matter. *See Mayer v. Brown*, 37 F.3d 618, 619 (Fed.Cir. 1994) (Federal Circuit reviews Court of Veterans Appeals' interpretation of its jurisdictional statutes). Our review is limited to questions of law, *see* 38 U.S.C. § 7292(d)(2) (1994), and it is *de novo, see, e.g., Degmetich v. Brown*, 104 F.3d 1328, 1331 (Fed.Cir.1997); *Weddel v. Secretary of the Dep't of Health & Human Servs.*, 23 F.3d 388, 391 (Fed.Cir. 1994); 38 U.S.C. § 7292(a), (c) (1994).

■ A claimant has the right to sue the United States only when it has consented to be sued, through a waiver of sovereign immunity. *See, e.g., United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). In this case, the United States effected a waiver of its sovereign immunity through 38 U.S.C. § 7252, where it has vested jurisdiction to consider a claim in the Court of Veterans Appeals. *See, e.g., In re Wick v. Brown*, 40 F.3d 367, 370–73 (Fed.Cir. 1994). Congress entitled this section "Jurisdiction; finality of decisions" and placed it in subtitle I, entitled "Organization and Jurisdiction." It reads:

(a) The Court of Veterans Appeals shall have exclusive jurisdiction to review decisions of the Board of Veterans' Appeals.

The Secretary may not seek review of any such decision. The Court shall have power to affirm, modify, or reverse a decision of the Board or to remand the matter, as appropriate.

(b) Review in the Court shall be on the record of proceedings before the Secretary and the Board. The extent of the review shall be limited to the scope provided in section 7261 of this title. The Court may not review the schedule of ratings for disabilities adopted under section 1155 of this title or any action of the Secretary in adopting or revising that schedule.

(c) Decisions by the Court are subject to review as provided in section 7292 of this title.

However, because we must construe jurisdictional statutes narrowly and "with precision and with fidelity to the terms by which Congress has expressed its wishes," *Cheng Fan Kwok v. INS*, 392 U.S. 206, 212, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968), this waiver of immunity and the creation of jurisdiction must be qualified by any conditions that Congress has placed on them. *See, e.g., Block v. North Dakota ex rel. Board of Univ. and School Lands*, 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983); *Lehman v. Nakshian*, 453 U.S. 156, 160–61, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981). In this case, the disputed qualification is a time limit set forth in section 7266(a), which reads:

(1) In order to obtain review by the Court of Veterans Appeals of a final decision of the Board of Veterans' Appeals, a person adversely affected by such decision shall file a notice of appeal with the Court within 120 days after the date on which notice of the decision is mailed pursuant to section 7104(e) of this title.

(2) An appellant shall file a notice of appeal under this section by delivering or mailing the notice to the Court.

(3) A notice of appeal shall be deemed to be received by the Court as follows:

(A) On the date of receipt by the Court, if the notice is delivered.

(B) On the date of the United States Postal Service postmark stamped on the cover in which the notice is posted, if the notice is properly addressed to the Court and is mailed.

38 U.S.C. § 7266(a). Congress entitled this section "Notice of Appeal," and placed it in subchapter II, which it entitled "Procedure."

Alone, the differences in placement and nomenclature between this section and section 7252 might suggest that Congress intended section 7266 to regulate the procedures whereby a claimant seeks review of a claim rather than condition the waiver of sovereign immunity by limiting the jurisdiction of the court with a statute of limitations. *See, e.g., Henderson v. United States*, 517 U.S. 654, 665–67, 671, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996) (holding service of process to be procedural and auxiliary, not jurisdictional, in part because of its placement within the larger statutory framework). However, courts have recognized statutes of limitations as limits to grants of jurisdiction. *See, e.g., id.* at 671, 116 S.Ct. 1638 ("Its essential purpose is auxiliary, a purpose distinct from the substantive matters ... who may sue, on what claims, for what relief, *within what limitations period*.") (emphasis added, internal footnotes omitted); *United States v. Williams*, 514 U.S. 527, 534 n. 7, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995) ("As a statute of limitations, § 6511(a) does narrow the waiver of sovereign immunity in § 1346(a)(1) by barring the tardy."). Therefore, to determine whether the Court of Veterans Appeals can equitably toll the limitations period set forth in section 7266, we must go beyond the placement and nomenclature that Congress chose to express the metes and bounds of the waiver of immunity. We take our guidance from *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990).

The facts in *Irwin* involve the attempt by Shirley Irwin, who was fired from his job in the Veterans' Administration, to initiate a civil action under Title VII of the Civil Rights Act of 1964, after the agency's denial of his complaint of unlawful discharge on the basis of race and physical disability had been affirmed by the Equal Employment Opportunity Commission (EEOC). The statute in question in the case specified that Irwin's Title VII complaint must be filed "within thirty days of receipt of notice of final action" taken by the EEOC. Because Irwin's Title VII complaint was untimely filed, he argued

that the doctrine of equitable tolling should excuse his tardiness.

The Supreme Court noted that its previous decisions concerning "the effect of time limits in suits against the Government have not been entirely consistent," *id.* at 94, 111 S.Ct. 453, and rejected "a continuing effort on our part to decide each case on an ad hoc basis [which] would have the disadvantage of continuing unpredictability without the corresponding advantage of greater fidelity to the intent of Congress." *Id.* at 95, 111 S.Ct. 453. Instead, the Supreme Court decided on "a more general rule to govern the applicability of equitable tolling in suits against the Government." *Id.* Even though the 30–day time limit in the pertinent statute was held to be a condition to the waiver of sovereign immunity permitting the Title VII suit to be filed, and thus a condition to be "strictly construed," *id.* at 94, 111 S.Ct. 453, the Court stated:

> Once Congress has made such a waiver, we think that making the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to private suits, amounts to little, if any, broadening of the congressional waiver. Such a principle is likely to be a realistic assessment of legislative intent as well as a practically useful principle of interpretation. We therefore hold that the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States. Congress, of course, may provide otherwise if it wishes to do so. [*Id.* at 95, 111 S.Ct. 453.]

■ The Supreme Court's opinion does not distinguish among the various kinds of time limitations that may act as conditions to the waiver of sovereign immunity required to permit a cause of action to be pitched against the United States. Some time limitations are addressed to the time period (often measured in years) within which a litigant must first file suit following the point at which the cause of action arose, typically referred to as statutes of limitations, while other time limits specify the time in which a person must remove from one adjudicative forum to another. The latter may be referred to as statutes specifying the time for review. Indeed, the statute in question in *Irwin* can be

viewed as a statute of limitations or a statute specifying the time for review, because the 30–day limit measured the time in which to initiate a case in the United States District Court that would revisit the charge of discrimination alleged before the EEOC. Because *Irwin* states a rule of general applicability for equitable tolling in suits against the United States, we have no reason to assume that the general rule is applicable to some, but not other, time limits that govern suits against the United States. The rule we draw from *Irwin* is that the doctrine of equitable tolling, when available in comparable suits of private parties, is available in suits against the United States, unless Congress has expressed its intent to the contrary.

*Irwin* thus leaves us with two remaining questions: would equitable tolling be available between private litigants in Bailey's situation, and did Congress provide otherwise. This second question has been expressed as *"Irwin*'s negatively phrased question: Is there good reason to believe that Congress did not want the equitable tolling doctrine to apply" in a suit against the United States? *United States v. Brockamp,* 519 U.S. 347, ——, 117 S.Ct. 849, 851, 136 L.Ed.2d 818 (1997) (equitable tolling is not permissible where inconsistent with the text of the statute).

■ *Irwin* and other cases explain that equitable tolling is available in suits between private litigants where, "the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin* at 96, 111 S.Ct. 453 (footnotes omitted); *see also Juice Farms, Inc. v. United States,* 68 F.3d 1344, 1346 (Fed.Cir.1995) (*"Irwin* would allow equitable tolling only if the Government tricked Juice Farms into missing the deadline. *Irwin* also weighs Juice Farms' diligence in determining whether to toll a limitations period.") (internal citations to *Irwin* omitted). However, courts are less likely to toll the limitations period when the filing is late and "claimant failed to exercise due diligence in preserving his legal rights." *Irwin,* 498 U.S. at 96, 111 S.Ct. 453.

Comparing Bailey's circumstances with those of private litigants is difficult. We

know he was informed that an appeal had to be filed with the Court of Veterans Appeals, that he was diligent in executing his first notice of appeal, that he was misled by the Veterans Benefits Officer into believing that she would file his appeal, and that his second notice of appeal was properly filed with the court, but was filed outside the 120 day limitation period. Beyond this, the peculiarities of Bailey's circumstances arise because the other party is the government, and are complicated by the recent change in the relationship between the Department of Veterans Affairs and the veterans it was created to assist. Since the Veterans' Judicial Review Act, Pub.L. No. 100–687, 102 Stat. 4105 (1988), it appears the system has changed from "a nonadversarial, *ex parte*, paternalistic system for adjudicating veterans' claims," to one in which veterans like Bailey must satisfy formal legal requirements, often without the benefit of legal counsel, before they are entitled to administrative and judicial review. *Collaro v. West*, 136 F.3d 1304, 1309–10 (Fed.Cir.1998).

According to allegations in the papers before us, Bailey learned before the time had run that he could file a claim with the aid of a Veterans Benefits Counselor, rather than an attorney. His reliance on, and faith in what Congress clearly intended to be a paternalistic means for addressing veterans' claims, *see, e.g. Walters v. National Ass'n of Radiation Survivors*, 473 U.S. 305, 323–24, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985) (superseded by Veterans Judicial Review Act), presumably lulled him into accepting and relying upon the advice and aid of the government. Given the particular relationship between veterans and the government, Bailey was misled by the conduct of his adversary into allowing the filing deadline to pass. Although there is no suggestion of misconduct, such as tricking Bailey into missing the 120 day filing deadline, we nevertheless conclude that a veteran's inducement by an adversary's conduct is akin to grounds sufficient to toll a limitations period in a private suit. Therefore, following *Irwin*, where the Court would not extend equitable tolling in an action between private parties that was "at best a garden variety claim of excusable neglect"—a factual situation far less deserving

of equitable intervention than Bailey's circumstances—we hold that absent a contrary congressional expression, the Court of Veterans Appeals would be entitled to toll the statute of limitations found in section 7266.

The remaining *Irwin* question is whether there is good reason to believe that Congress did not want equitable tolling to apply to the limitations period in section 7266. To answer this question, we must find Bailey's place among a handful of post-*Irwin* cases. In *Brockamp*, the Court held that the statute of limitations expressed in 26 U.S.C. § 6511, a tax statute, cannot be equitably tolled because Congress "sets forth its limitations in a highly detailed technical manner, that linguistically speaking, cannot easily be read as containing implicit exceptions. Moreover, § 6511 reiterates its exceptions several times in several different ways." 519 U.S. at ——, 117 S.Ct. at 851. The Court also said "§ 6511 sets forth explicit exceptions to its basic time limits, and those very specific exceptions do not include 'equitable tolling'" and "[t]o read an 'equitable tolling' provision into these provisions, one would have to assume an implied exception for tolling virtually every time a number appears. To do so would work a kind of linguistic havoc." *Id.* at ——, 117 S.Ct. at 852. Finally, the Court pointed to policy considerations underscoring the need for repose and for administrative simplicity. *Id.* at ——, 117 S.Ct. at 850; *see also Williams*, 514 U.S. at 534 n. 7, 115 S.Ct. 1611 (citing *United States v. Dalm*, 494 U.S. 596, 602, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990)).

None of these factors are present in section 7266, which although specific in stating where, how and when the notice of appeal must be filed, does not do so in a highly detailed, technical, or repetitive manner. We cannot say that applying equitable tolling to this statute would permit or require application of the doctrine in other statutes in a manner broader than was contemplated in *Irwin*. Likewise, section 7266 does not provide its own exceptions to the general rule. Finally, because the statute addresses timeliness for an appeal from a closed record, it does not threaten administrative complexity or unpredictable fiscal peril.

In *United States v. Beggerly*, the Court held the *Irwin* presumption rebutted because Congress had already accounted for equita-

ble tolling of the Quiet Title Act, 28 U.S.C. § 2409a, by "providing that the statute of limitations will not begin to run until the plaintiff 'knew or should have known of the claim of the United States,'" and "the unusually generous nature of the [Act's] limitations time period [makes] extension of the statutory period by additional equitable tolling ... unwarranted." 524 U.S. ——, ——, 118 S.Ct. 1862, 1868, 141 L.Ed.2d 32 (1998); *see also Lampf v. Gilbertson*, 501 U.S. 350, 363, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) (Congress did not intend the statute of limitations of 15 U.S.C. § 78j(b) (pertaining to the Securities and Exchange Commission) to be equitably tolled given that "[t]he 1–year period, by its terms, begins after discovery of the facts constituting the violation, mak[ing] tolling unnecessary. The 3–year limit is a period of repose inconsistent with tolling.") (superseded on other grounds by Public Law 102–242 § 476 (Dec. 19, 1991)). *Beggerly* also said that the "special importance that landowners know with certainty what their rights are, and the period during which those rights may be subject to challenge," is incompatible with additional equitable tolling. 524 U.S. at ——, 118 S.Ct. at 1868.

Bailey's circumstances·are again quite different. Section 7266's limitations period does not begin with or rely on knowledge, actual or presumed; it begins on a mailing date. The limitations period is not generous, especially in light of the status of this type claimant. Likewise, no special importance attaches to the government's need to know its possible financial liabilities or when Bailey's rights might change. All relevant information had been presented to and established by the Board of Veterans' Appeals.

Our analysis of the case law is not complete without asking whether two Supreme Court cases decided subsequently to *Irwin*, but each without mention of *Irwin*, undercut our view that the general rule of *Irwin* applies to 38 U.S.C. § 7266(a), which is a statute specifying the time for review. The two cases are *Stone v. INS.*, 514 U.S. 386, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995) and *Missouri v. Jenkins*, 495 U.S. 33, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990), which is cited in *Stone*.

*Stone* answered the question of whether the timely filing of a motion for reconsideration of a decision by the Immigration and Naturalization Service's Board of Immigration Appeals tolls the statutory requirement that "a petition for review [of a final deportation order] may be filed not later than 90 days after the date of issuance of the final deportation order...."8 U.S.C. § 1105a(a)(1) (1988 ed., and Supp. V). The Supreme Court noted that the ordinary treatment of agency orders under reconsideration calls for tolling of the time for review, see 514 U.S. at 393, 115 S.Ct. 1537, but after a lengthy review of amendments to the Immigration and Naturalization Act, the Court concluded that Congress has expressed its intent that the normal rule should not apply. *See* 514 U.S. at 394–98, 115 S.Ct. 1537. Consequently, the Court held that the normal tolling rule had been displaced by Congress.

The *Stone* opinion does not mention *Irwin*, although the facts in *Stone* could be viewed as questioning whether a rebuttable presumption of equitable tolling has been negated by congressional intent. Even so, we think *Stone* is consistent with the rule of *Irwin*. We cannot overlook, however, that at the end of the *Stone* opinion, the Supreme Court spoke generally about "statutory provisions specifying the time of review," 514 U.S. at 405, 115 S.Ct. 1537, and stated that such time limits are "mandatory and jurisdictional," citing *Missouri v. Jenkins*, "and are not subject to equitable tolling." *Id.* We do not think this language can be read to mean that statutes specifying the time for review cannot be subject to equitable tolling because such statutes are mandatory and jurisdictional. The statute in question in *Irwin*, held to be subject to equitable tolling, is no less mandatory and jurisdictional than the one in *Stone*. Nor is the extent of the waiver of sovereign immunity any greater for a statute specifying the time for review: in fact, by the time a statute specifying the time for review comes into play, the sovereign has already waived its immunity to suit.

We think it reasonable to read the language at the end of *Stone* to mean that statutory provisions specifying the time for review are not subject to equitable tolling, after *Irwin*, if Congress has so expressed its intent. As we have noted above, such a reading is consistent with the analysis em-

ployed by the Supreme Court in *Stone* to reach the conclusion that Congress had displaced a species of equitable tolling that otherwise would have had effect in the case.

We reach our conclusion that statutes specifying the time for review are within the rebuttable presumption in favor of equitable tolling for another reason. To draw a line between statutes of limitation and statutes specifying the time for review, or even hybrid statutes that may seek to accomplish both ends, would promote piecemeal adjudication of the equitable tolling issue. Thus, the uncertainties that *Irwin* laid to rest would endure, with the opportunity for inconsistent rulings concerning the availability of equitable tolling, even though no real distinction in terms of jurisdiction or sovereign immunity could be drawn to explain the inconsistencies.

We cannot finish, however, without considering *Missouri v. Jenkins*, 495 U.S. 33, 110 S.Ct. 1651, 109 L.Ed.2d 31, which observed that the time limit in 28 U.S.C. § 2101(c) of 90 days for filing a petition for certiorari to the Supreme Court is "mandatory and jurisdictional," and "[w]e have no authority to extend the period for filing except as Congress permits." *Id.* at 45, 110 S.Ct. 1651. On a facial reading, this language, like that we observed in *Stone*, could be read to mean that statutes specifying the time for review can never be equitably tolled. For the reasons set out in our discussion of *Stone*, we resist such a reading. In addition, with regard to section 2101(c), Congress has expressed an intent to shield the statute from equitable tolling by providing that the 90 day limit, while facially rigid, is subject to up to 60 days in addition for "good cause shown" to a justice. We thus think it apt to read section 2101(c) much as the Supreme Court read the pertinent statute in *Stone*, to evidence "the intent of Congress" of which *Irwin* speaks to command the result that the post-*Irwin* presumption of availability of equitable tolling has been withheld by Congress.

Such congressional intent to withhold the availability of equitable tolling with respect to the time period for appealing to the Court of Veterans Appeals is not provided by Rules 4 and 26(b), Fed. R.App. P., or 28 U.S.C. § 2107. These govern appeals from Article III district courts and are inapplicable to the Court of Veterans Appeals, an Article I court. The Federal Rules of Appellate Procedure are legislative in nature: they are prescribed by the Supreme Court pursuant to 28 U.S.C. § 2072 and are presented to Congress pursuant to 28 U.S.C. § 2074 before going into effect. Presenting the rules to Congress allows the opportunity to "legislate any changes in them." *Houston v. Lack*, 487 U.S. 266, 280, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (Scalia, J., dissenting).

In contrast, the Court of Veterans Appeals prescribes its own rules. *See* 38 U.S.C. § 7264(a) ("The proceedings of the Court of Veterans Appeals shall be conducted in accordance with such rules of practice and procedure as the Court prescribes.") Two of its rules provide that "the Court may not extend the time for filing a Notice of Appeal." Rules 2 and 26(b), U.S. Vet.App. R. However, those rules were not submitted to Congress, but went into effect after public notice and comment pursuant to 28 U.S.C. § 2071(b). As such, the Court of Veterans Appeals rules do not partake of legislation and cannot override Congress' presumed statutory intent about the applicability of equitable tolling under *Irwin*.

We recognize that language in *Stone* and *Missouri v. Jenkins* can be read to draw a bright line which would place statutes of limitation on one side of the Irwin presumption and statutes of timing of review on the other. We are not comfortable drawing that line, because the language of *Irwin* admits of no such distinctions, and for the reasons set forth above. *Missouri v. Jenkins* was decided only a few months before *Irwin*. If the Supreme Court had meant to shield statutes specifying the time for review from the *Irwin* presumption, we would have expected the distinction to be drawn in *Irwin*.

The Supreme Court has also recognized a form of equitable tolling * where a petitioner

---

* And so have we. *See Houston v. Lack*, 487 U.S. 266, 274–75, 108 S.Ct. 2379, 101 L.Ed.2d 245

(1988).

cannot control or oversee delivery to and receipt by the court clerk. *See, e.g., Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (prisoner's delivery of notice of appeal to prison authority deemed filed, though statute requires receipt by the clerk). Though veterans are in a better position to ensure receipt by a court clerk, the statutes and department rules and regulations lead them to justifiable reliance on the government in a way far more deserving of equitable tolling than convicted felons. The Supreme Court having extended its generosity to convicts, we are loath to treat less worthily those who have served the country. We decline to deny equitable tolling of section 7266 in Bailey's circumstances where other species of equitable tolling of similarly worded statutes are recognized in suits against the government.

Finally, to read the legislative history of section 7266 as requiring ruthless application of the time limit is somewhat arbitrary. For example, Congress' omission of the "good cause" delay provision from section 7266 can be read either as an expression of its intent to further limit jurisdiction or as an attempt to remove unnecessary language where common sense would dictate tolling. *Irwin* commands that tolling should be presumed absent a clear contrary intent of Congress to limit jurisdiction created by a particular statute. None of the reasons for restricting application of equitable tolling are present here, and there is no reason to believe that Congress wanted to bar its application to section 7266. Bailey is entitled to the *Irwin* presumption of equitable tolling.

We acknowledge that language in previous opinions of this court has stated or implied that the time limit of 38 U.S.C. § 7266(a) is mandatory, jurisdictional and not subject to equitable tolling. *Cummings v. West,* 136 F.3d 1468, 1472 n. 2 (Fed.Cir.1998); *Mayer v. Brown,* 37 F.3d 618, 619 (Fed.Cir.1994); *Butler v. Derwinski,* 960 F.2d 139, 140–41 (Fed.Cir.1992); *see Machado v. Derwinski,* 928 F.2d 389, 391 (Fed.Cir.1991). The applicability of *Irwin* to the issue in those cases was not argued, which may explain the absence of any reference to *Irwin* in the opinions. Although they could be overlooked on the ground that they were not required to test the relevant statute under the command

of *Irwin,* we have reconsidered the cases. We hold that, in light of *Irwin,* previous statements that equitable tolling is unavailable against 38 U.S.C. § 7266(a) are overruled.

### Conclusion

Accordingly, the judgment of the Court of Veterans Appeals is reversed and the case is remanded for further proceedings in accordance with this opinion.

### REVERSED AND REMANDED

MICHEL, *Circuit Judge,* concurring in the result.

I write separately for two reasons. First, I wish to emphasize the limited scope of this decision as I would construe it. Second, while I agree with the result reached by the majority, that the Court of Veterans Appeals may toll its filing deadline and should consider whether the facts here justify tolling, I would like to explain why I nevertheless do not join in its opinion.

This decision simply upholds the authority of the Court of Veterans Appeals to toll its 120–day deadline for the filing of appeals from the Board of Veterans' Appeals. This decision does not decide, nor even purport to address, whether other tribunals may toll their particular filing deadlines. However, because certain statements of our court about certain comments in *Irwin* could be read to suggest a broader application of *Irwin* to other tribunals, I am unable to join the majority opinion.

The Court of Veterans Appeals operates in a unique, paternalistic administrative environment. Indeed, when Congress established the Court of Veterans Appeals it explained that:

Congress has designed and fully intends to maintain a beneficial non-adversarial system of veterans benefits. This is particularly true of service-connected disability compensation where the element of cause and effect has been totally bypassed in favor of a simple temporal relationship between the incurrence of the disability and the period of active duty.

I[m]plicit in such a beneficial system has been an evolution of a completely ex-parte system of adjudication in which Congress expects [the DVA] to fully and sympathetically develop the veteran's claim to its optimum before deciding it on its merits. Even then, [the DVA] is expected to resolve all issues by giving the claimant the benefit of any reasonable doubt.

H.R.Rep. No. 100–963, at 13 (1988), *reprinted in,* 1988 U.S.C.C.A.N. 5782, 5795. Thus, the Court of Veterans Appeals is an adjudicatory body that was created in 1988 with the legislative intent that it reflect the pre-existing, benevolent nature of the veterans' benefits system which Congress wished to continue. Both the Supreme Court and this court have long recognized that the disputes that arise in this system are subject to procedural and other rules that are distinctly advantageous to the veteran claimant. *See, e.g., Brown v. Gardner,* 513 U.S. 115, 117–18, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) (explaining that any interpretive doubt should be resolved in the veteran's favor); *Walters v. National Ass'n of Radiation Survivors,* 473 U.S. 305, 323, 333–34, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985) (upholding the constitutionality of the then-existing fee limitation on veterans' attorneys or agents on the grounds that the veteran would receive less of the award, "the system should be as informal and nonadversarial as possible," and because the veteran "is provided with substitute safeguards such as a competent representative, a decisionmaker whose duty it is to aid the claimant, and significant concessions with respect to the claimant's burden of proof"); *Coffy v. Republic Steel Corp.,* 447 U.S. 191, 196, 100 S.Ct. 2100, 65 L.Ed.2d 53 (1980) (stating that veterans' statutes must be liberally construed for the benefit of the returning veteran (citing *Fishgold v. Sullivan Drydock & Repair Corp.,* 328 U.S. 275, 278, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946)); *Hodge v. West,* 155 F.3d 1356, 1363 (Fed.Cir.1998) (concluding that "in the context of veterans' benefits where the system of awarding compensation is so uniquely pro-claimant, the importance of systematic fairness and the appearance of fairness carries great weight"); *Collaro v. West,* 136 F.3d 1304, 1309–10 (Fed.Cir.1998) (describing "a nonadversarial, ex parte, paternalistic system for adjudicating veterans' claims").

The decision today to permit the tolling of the Court of Veterans Appeals's 120–day filing deadline should be understood as derived from this uniquely benevolent statutory framework. Thus, it should not be read to overrule our precedent holding that filing deadlines for appeals to this court are not tollable. *See. e.g., Pinat v. Office of Personnel Management,* 931 F.2d 1544 (Fed.Cir. 1991); *Monzo v. FAA,* 735 F.2d 1335 (Fed. Cir.1984); *Sofarelli Assocs., Inc. v. United States,* 716 F.2d 1395 (Fed.Cir.1983); *Reeves v. Department of the Army,* 228 Ct.Cl. 811 (1981); *Jenkins v. United States,* 228 Ct.Cl. 794 (1981). Nor, moreover, should it be viewed as having any applicability or relevance to the tolling of filing deadlines by other tribunals, trial or appellate.

The majority's discussion of the applicability of *Irwin* creates the potential that future readers might view this court's holding as broader than I believe it is. As today's decision is limited to the 120–day statutory filing deadline at the Court of Veterans Appeals, any attempt to apply a presumption of tolling to other tribunals or deadlines could only be based upon *dicta.* The applicability of *Irwin* to other situations, then, can only be decided, if it has not been already, in future cases and predominantly by other Courts of Appeals. Certainly, our decision not only does not, but also cannot overrule any decisions of those courts on equitable tolling of appeals filed with them. Nor can our decision properly be seen as controlling the tollability of filings in trial courts, including the Court of Federal Claims and the Court of International Trade, both of whose decisions are subject to review in our court.

Not only is the majority's application of *Irwin* broad, but it also appears to me at odds with the actual language used by the Supreme Court. The *Irwin* Court reasoned:

Once Congress has made such a waiver [of sovereign immunity], we think that making the rule of equitable tolling applicable to suits against the Government, *in the same way that it is applicable to private suits,* amounts to little, if any, broadening of the congressional waiver.... We therefore hold that *the same rebuttable presumption of equitable tolling applicable to suits*

*against private defendants* should also apply to suits against the United States. *Irwin,* 498 U.S. at 95–96, 111 S.Ct. 453 (emphasis added). The majority acknowledges this rule, stating that "[t]he rule we draw from *Irwin* is that the doctrine of equitable tolling, *when available in comparable suits of private parties,* is available in suits against the United States, unless the Congress has expressed its intent to the contrary" (emphasis added). There is, of course, no comparable civil action in which a party can litigate against another private party to obtain entitlement to veterans' benefits. Thus, the very premise of *Irwin*'s rebuttable presumption of equitable tolling is absent here.

Nevertheless, despite this seemingly intractable roadblock to applying *Irwin,* the majority poses the question "would equitable tolling be available between private litigant's in Bailey's situation?" and then answers in the affirmative because "a veteran's inducement by an adversary's conduct is akin to grounds sufficient to toll a limitations period in a private suit." However, in *Irwin* equitable tolling was permitted against the government in Title VII suits because equitable tolling was also permitted in Title VII private suits. Thus, the Supreme Court was examining whether equitable tolling was available in a comparable suit against a private party based upon the same statute. Here, however, the majority is examining whether equitable tolling is available for private parties offering a similar factual excuse in an unspecified, generic "private suit." This is not the test set forth in *Irwin.* Indeed, if that were the test, then the Supreme Court would not have examined whether tolling was permitted for Title VII civil actions, but rather would have analyzed whether Shirley Irwin's alleged failure to receive the letter explaining her right to file a civil action was the type of excuse that would permit tolling in a generic, private suit. By framing the issue as whether the factual excuse by the party in a suit against the government is comparable to factual excuses deemed worthy of equitable tolling in unrelated civil actions, rather than whether tolling is permitted in a comparable civil action, the majority misapplies and broadens the narrow rule of *Irwin.*

Finally, I cannot join the majority's reason for rejecting the distinction that might be drawn between deadlines for filing suit and deadlines for filing appeals, that is, that "no real distinction in terms of jurisdiction or sovereign immunity could be drawn." There is, I think, an additional consideration involved with regard to appeals that is not present with regard to filings initiating lawsuits. This consideration arises from the primacy of trial courts and the presumption that their judgments are correct and final, except only for such review and revision as are specified in the statute authorizing and establishing the pre-conditions for appeal. One of these pre-conditions is the limited period of time within which the appeal must be filed. Parties and other affected persons need to be able to rely on the finality of a judgment that has not been appealed within the statutory time limit for appeals.

Appellate courts occupy a position in the hierarchy of courts that may suggest that their power to decide—their jurisdiction—is broader than that of trial courts. In my view, however, a proper understanding of their respective roles leads to the opposite conclusion: appellate courts' power of review is sharply limited, for judgments are reviewable only if both final and adverse to the party appealing and, I think, if filed within the time required by statute.

The Board of Veterans' Appeals, of course, is not a trial court and the Court of Veterans Appeals, while surely an appellate court, is an Article I court set in a sui generis adjudicative scheme for awarding benefit entitlements to a special class of citizens, those who risked harm to serve and defend their country. This entire scheme is imbued with special beneficence from a grateful sovereign. On this basis alone, I would allow tolling by the Court of Veterans Appeals. The court today, however, pronounces that "*Irwin* commands that tolling should be presumed absent a clear contrary intent of Congress to limit jurisdiction created by a particular statute." I certainly would resist finding a boundless mandate in the language of *Irwin* about a general presumption of tollability, not least because the Court there expressly limited its purpose to equalizing the condi-

tions of Title VII plaintiffs suing federal agency employers with those suing private employers under the same statute. Perhaps that (as well as the fact that there is no comparable, private lawsuit to a motion to reconsider the affirmance of a deportation order) explains the absence in *Stone* of any discussion, much less distinction, of *Irwin.*

There is yet another, practical reason to hesitate to find appellate deadlines subject to equitable tolling. Unlike trial courts, we as a Court of Appeals lack adequate mechanisms to find contested or complex facts. Nor, as we do in other circumstances, can we remand to the trial court to find such facts, for they are not relevant to any issue before that court. Further, as we already struggle to decide appeals properly before us in a timely fashion, we should avoid assuming a new and time-consuming burden of adjudicating equities for tolling purposes. I therefore hope that today's decision will not haunt us tomorrow and I write to reduce that risk.

Accordingly, I concur in the judgment but do not join the opinion.

BRYSON, *Circuit Judge,* dissenting, joined by *Circuit Judges* LOURIE, RADER and SCHALL.

No one can dispute that on the equities Mr. Bailey has a compelling case. He submitted his notice of appeal to an officer of the Department of Veterans Affairs who promised to file it for him with the Court of Veterans Appeals but failed to carry through on the promise. The court understandably seeks not to penalize Mr. Bailey for the default on the part of the DVA employee in whom he placed his trust. The problem, however, is that in order to rule in Mr. Bailey's favor, the court has had to set aside several previous decisions of this court and to attempt to distinguish a Supreme Court decision construing a closely analogous statute. Even though the rule applied by the CVA has distasteful consequences in this case, I believe that fealty to the applicable precedents and to the principles governing judicial review provisions compels us to affirm.

This court has previously characterized compliance with the 120–day appeal period in 38 U.S.C. § 7266(a) as a "prerequisite for jurisdiction in the CVA." *Mayer v. Brown,* 37 F.3d 618, 619 (Fed.Cir.1994). Consequently,

we have held that the 120–day time limit cannot be waived, *see id.,* that it is not subject to extension upon a showing of good cause, *see Butler v. Derwinski,* 960 F.2d 139 (Fed.Cir.1992), and that it is not subject to equitable tolling, *see Cummings v. West,* 136 F.3d 1468, 1472 n. 2 (Fed.Cir.1998). The court today overrules those cases on the ground that they are inconsistent with the Supreme Court's decision in *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), which, according to the majority, requires that section 7266(a) be interpreted to permit equitable tolling.

I do not agree that *Irwin* controls this case. In *Irwin,* the Supreme Court dealt with a statute that required a government employee to file a Title VII action in district court within 30 days of receiving the EEOC's "right to sue" letter. The statutory procedure in cases involving government employees is essentially the same as the procedure in cases involving private employees, and the Court had previously held in private sector cases that the statutory time limits in Title VII are nonjurisdictional and thus subject to equitable tolling. Finding no evidence that Congress intended a different rule to govern the directly analogous provisions for government employees, the Court held that equitable tolling applies to the 30–day filing period for government employees as well. The Court then articulated the principle that when Congress has waived sovereign immunity and has imposed a time limit on suits against the government, "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." *Irwin,* 498 U.S. at 95–96, 111 S.Ct. 453.

If the period for filing a notice of appeal in section 7266(a) were considered a statute of limitations for filing suit, *Irwin* would require that the presumption of equitable tolling be applied. Periods for filing notices of appeal are not normally regarded as statutes of limitations, however. Instead, they are considered "timing of review" provisions, which are typically deemed "mandatory and jurisdictional" and not subject to equitable

tolling. *See Stone v. Immigration and Naturalization Serv.*, 514 U.S. 386, 405, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995).

For example, 28 U.S.C. § 2107 and Rule 4, Fed. R.App. P., which govern the timing of notices of appeal from federal district courts, have long been regarded as mandatory and jurisdictional, and thus not subject to equitable tolling. *See Browder v. Director, Illinois Dep't of Corrections*, 434 U.S. 257, 264, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978); *see also Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988). Likewise, the time limitation for certiorari petitions in civil cases, 28 U.S.C. § 2101, has always been considered mandatory and jurisdictional. *See Federal Election Comm'n v. NRA Political Victory Fund*, 513 U.S. 88, 90, 115 S.Ct. 537, 130 L.Ed.2d 439 (1994); *Missouri v. Jenkins*, 495 U.S. 33, 45, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990). In both instances, noncompliance with the timing provisions in the statute or rule is fatal to the appeal or petition for review, no matter how compelling the reason that the appellant or petitioner has failed to satisfy the applicable provisions.

In *Stone v. Immigration & Naturalization Service, supra*, the Supreme Court recently applied these principles to a statutory review scheme very similar to the one at issue in this case. The appeal in *Stone* was taken from the Board of Immigration Appeals, an adjudicative agency within the Department of Justice, to a federal court of appeals. Referring to the statute governing that appeal, the Court stated that "[j]udicial review provisions ... are jurisdictional in nature and must be construed with strict fidelity to their terms.... This is all the more true of statutory provisions specifying the timing of review, for those time limits are, as we have often stated, 'mandatory and jurisdictional,' ... and are not subject to equitable tolling." *Stone*, 514 U.S. at 405, 115 S.Ct. 1537.

The appeal in this case is taken from the Board of Veterans' Appeals, an adjudicative agency within the Department of Veterans Affairs, to the Court of Veterans Appeals, an Article I federal court. The timing of review provision at issue in *Stone*, 8 U.S.C. § 1105a(a)(1), parallels the timing of review provision at issue in this case, 38 U.S.C. § 7266(a)(1), in that both provide a fixed period of time within which an appeal may be taken to a reviewing court. The Supreme Court's characterization of the statutory provision governing the timing of review in *Stone* is therefore directly applicable to the similar statutory provision governing the timing of review in this case. By contrast, the 30-day limitations period at issue in *Irwin* is not a "timing of review" provision at all, because the action brought in district court is not a review of anything done by the EEOC, but an original discrimination action against the employer agency.

In sum, this case is controlled not by *Irwin*, but by *Stone*. Of course, the general principle in *Stone* regarding timing-of-review provisions would be inapplicable if there were anything in section 7266(a)(1) or its legislative history indicating that the timing provision governing appeals to the Court of Veterans Appeals was meant to be subject to equitable tolling. But there is not. The text of the statute follows the model of other jurisdictional review provisions, and the legislative history supports that interpretation of the statute.

The bill that was ultimately enacted as the Veterans Judicial Review Act in 1988 was a compromise measure between two very different bills in the House and Senate. The Senate bill would have allowed direct review of BVA decisions by the regional courts of appeals. The timing-of-review provision of that bill was clearly jurisdictional in nature. The bill provided that "[n]o action [for judicial review] may be brought" unless the request for review was filed within 180 days of the BVA decision, S. 11, 100th Cong., 2d Sess. § 4025(g)(1), and the report of the Senate committee made clear that the bill would "preclude judicial review ... unless ... the appeal to a United States Court of Appeals is filed within 180 days of the first BVA decision adverse to the claimant." S.Rep. No. 100-418, 100th Cong., 2d Sess. 53 (1988). The House bill would have eliminated the BVA altogether and replaced it with the CVA, a 65-judge court responsible for reviewing decisions of the Department's regional offices. The timing provision for appeals from the regional offices to the CVA under the House bill would have required a

formal appeal to be filed in the CVA within 90 days of the mailing of the statement of the case to the veteran, but the House bill further provided that the 90–day time period could be extended by the court for good cause shown. H.R. 5288, 100th Cong., 2d Sess. § 4015(d)(1).

The compromise bill, which was ultimately enacted, preserved the BVA and provided for review of BVA decisions by the CVA. The provision governing the timing of review in the CVA allowed the veteran 120 days to file a notice of appeal to the CVA. Significantly, the "good cause" provision in the House bill was omitted from the compromise bill. Had that provision remained in the bill, the review timing statute would have been properly construed as non-jurisdictional in nature. *See Bowen v. City of New York*, 476 U.S. 467, 478, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986) (statute permitting agency to extend filing time for "good cause" held to be non-jurisdictional). Instead, the compromise bill provided that the notice of appeal "must be filed" within 120 days after the date on which the notice of the BVA decision is mailed, language that at least suggests that the provision was intended to be mandatory and jurisdictional. Finally, the compromise bill required the appellant to supply a copy of the notice of appeal to the Administrator, but it provided that a failure to do so would not constitute a failure of timely compliance with the notice of appeal requirement, a proviso that suggests that a failure to file a timely notice of appeal would be regarded as fatal to the appeal.

Although Congress amended section 7266 in 1994, the amendment did not affect the jurisdictional nature of the timing requirement. In fact, both the sponsor of the amendment and the Senate Committee that reported it acknowledged that the CVA treated notices of appeal as jurisdictional, but did not question that principle. *See* S.Rep. No. 103–232, 103d Cong., 2d Sess. 5–7 (1994); 138 Cong. Rec. 18023 (1992) (statement of Sen. Cranston). The 1994 amendment simply altered the requirement of actual delivery by providing that notices of appeal would be deemed timely filed if they were mailed within the 120–day appeal period. The 1994 amendment thus made the timely filing requirement more lenient by establishing a "postmark rule," but it did not alter the jurisdictional nature of that requirement. The Committee acknowledged that the consequence of mailing a notice of appeal outside of the 120–day appeal period would still be dismissal. S.Rep. No. 103–232, *supra*, at 6.

Although the legislative history is not conclusive, it suggests that section 7266(a) was meant to be a jurisdictional timing provision and thus not subject to equitable tolling. In any event, nothing in the text or legislative history of section 7266(a) is inconsistent with what the Supreme Court identified in *Stone* as the general rule that "[j]udicial review provisions ... are jurisdictional and must be construed with strict fidelity to their terms." Construing the judicial review provision in section 7266(a) in strict fidelity to its terms, we are required to affirm the Court of Veterans Appeals' decision dismissing Mr. Bailey's appeal for lack of jurisdiction.

The compelling facts of this case do not justify disregarding the dictates of the governing procedural rule. As Justice Scalia pointed out when writing for the court of appeals, lack of jurisdiction means "an inability to act, not merely in unappealing cases, but in compelling cases as well." *National Black Media Coalition v. Federal Communications Comm'n*, 760 F.2d 1297, 1300 (D.C.Cir.1985). I therefore respectfully dissent.