KASOLD, Judge,
dissenting:
This case falls squarely within the equitable tolling parameters established in Bailey v. West, 160 F.3d 1360 (1998), which held that, even without a finding of any misconduct on the part of an employee of the Department of Veterans Affairs, the time to file an appeal is equitably tolled when the veteran has been “lulled ... into accepting and relying upon the advice and aid of the government” and thereby “misled ... into allowing the filing deadline to pass.” Id. at 1365. Mr. Tavares was so lulled in this case.
According to Mr. Tavares, Mr. Padilla had been helping him with his claim since July 2001. Mr. Tavares submitted telephone records reflecting numerous calls from July 2001 through July 2002 to Mr. Padilla’s telephone number at the San Diego Regional Office. He also submitted a *141 copy of a September 2001 letter to Mr. Padilla waiving his right to a Board hearing. On January 22 or 23, 2002, the day Mr. Tavares received the decision of the Board denying his claim, he and his wife drove over 60 miles to meet with Mr. Padilla to discuss an appeal. During that meeting, Mr. Tavares asserts that he was told by Mr. Padilla that he would “work on his appeal from a different angle,” and Mr. Tavares came away from that meeting with the understanding that Mr. Padilla “would see that the claim went into the Court of Veteran’s Appeal and [that Mr. Padilla] would send a letter of support.”[1]
Mr. Tavares states that in March 2002 he was advised by Mr. Padilla that his appeal had been filed and assigned a docket number, and that Mr. Padilla agreed to “go digging” in the file for the docket number and provide it to Mr. Tavares. Mr. Tavares further states that he continued to maintain telephone contact with Mr. Padilla over the next several months trying to get his docket number and information about his appeal; this included numerous voice messages. In a May conversation with Mr. Padilla, Mr. Tavares states that he was told that it would take 8 to 9 months before his case would be heard.
On June 5, 2002, when he was advised by Mr.. Padilla that some documents needed to be signed, Mr. Tavares and his wife undertook the 60-mile trip that same day to meet with Mr. Padilla and complete another Notice of Appeal and Declaration of Financial Hardship, which were then faxed to the Court by Mr. Padilla. Mrs. Tavares submitted an affidavit dated September 17, 2002, supporting the statements of her husband.
In contrast to Mr. Tavares’ statements, Mr. Padilla does not mention assisting Mr. Tavares as early as July 2001, implying that he first met Mr. Tavares in January 2002. While Mr. Padilla states that he told Mr. Tavares at the January meeting that he was not able to help him file his appeal, he admits to helping him do exactly that in June, although no explanation is provided as to why such assistance was permitted in June but not in January. Mr. Padilla also acknowledges talking to Mr. Tavares a few weeks after the January meeting, although he states that he told Mr. Tavares that he could neither provide nor obtain information about Court time frames; strangely, Mr. Padilla makes no mention of the numerous calls made to him by Mr. Tavares.[2] Mr. Padilla states that he also told Mr. Tavares on June 5, 2002, *142 that he had no way of contacting the Court and that he was concerned about the appeal because the claims file was still in the office. Mr. Padilla confirms that Mr. Ta-vares came to his office that same day and that they sat down together and completed another set of forms, and that Mr. Padilla faxed those forms to the Court.
Without ascribing bad faith to either party, the facts, in my opinion, weigh significantly more in favor of Mr. Tavares’ recollection of events, than they weigh in favor of Mr. Padilla’s. See Stokes v. Derwinski, 1 Vet.App. 201, 203-04 (1991) (authorizing the Court to find facts for jurisdictional purposes). It is undisputed that Mr. Tavares drove over 60 miles to meet with Mr. Padilla immediately upon receipt of his notice of the Board decision and again immediately upon learning that an appeal had not been filed, and that numerous phone calls were made by Mr. Tavares to Mr. Padilla’s office phone number. These actions evidence Mr. Tavares’ interest in appealing his claim and his belief that he would receive assistance from Mr. Padilla. Indeed, Mr. Tavares made at least 19 phone calls to Mr. Padilla from the date he met with him on January 22 or 23, 2001, to discuss the appeal through June 5, 2001, when the appeal was filed by Mr. Padilla on behalf of Mr. Tavares,[3] and there is no reasonable, alternative explanation proffered by the Secretary or Mr. Padilla, or consistent with the facts in this case, other than that Mr. Tavares believed Mr. Padilla “would see that the claim went into the Court of Veteran’s Appeal and [that Mr. Padilla] would send a letter of support.” It is also undisputed that Mr. Padilla helped Mr. Tavares complete the appeal forms and that he faxed them to the Court. This confirms, at least in the end, Mr. Tavares’ belief regarding assistance from Mr. Padilla. The fact that Mr. Padilla helped complete the appeal forms and fax them to the Court also weighs against the recollection of Mr. Padilla that he had repeatedly told Mr. Tavares that he could not assist him and that he had no way of contacting the Court; indeed, it weighs in support of Mr. Tavares’ understanding that Mr. Padilla “would see that the claim went into the Court of Veteran’s Appeal [sic] and [that Mr. Padilla] would send a letter of support.”
Mr. Tavares’ behavior in relying on Mr. Padilla’s assistance to file his claim also is consistent with the documentation he produced and the statements he and his wife submitted to this Court, whereas Mr. Padilla’s behavior in actively filing the appeal in June 2001 is in direct contradiction to the statements that he claims to have made to Mr. Tavares and the statement that he made to this Court regarding his ability to provide assistance to Mr. Ta-vares. Mr. Padilla’s failure to address the extended contact and working relationship he had with Mr. Tavares from June 2001 through June 2002 and beyond, and his failure to address the many phone calls made to him between January and June 2002, also weigh against the accuracy of his recollection of events. In short, Mr. Padilla’s statement to this Court is inherently inconsistent with his behavior, his previous assertions, his own statement, and the documented facts.
Overall, the evidence supports a conclusion that Mr. Tavares has demonstrated by a preponderance of evidence that he was “lulled ... into accepting and relying upon the advice and aid of the government” and thereby “misled ... into allowing the filing deadline to pass.” See Bat- *143 ley at 1365. Finally, the Secretary has not alleged, and I fail to perceive, any prejudice to the Secretary by a finding that equitable tolling is applicable in this case. See Barrett v. Principi, 363 F.3d 1316, 1320 (2004).
For the reasons stated above, I respectfully dissent.

. The majority notes that Mr. Tavares asserted that he sent a copy of his appeal to the Court in January 2001, and further notes that the letter was never received by this Court. This seems inapposite to the issue under consideration, as lack of proof of mailing an appeal does not translate into lack of credibility of the veteran who says he mailed it. Documents get lost in the mail and even lost at this Court. See e.g., Evans v. Principi, 17 Vet.App.41, 42 (2003) (lost or misfiled document). At best, Mr. Tavares’ statement that he mailed a copy of an appeal to the Court is simply a neutral fact given the nature of the issue before the Court; i.e., whether equitable tolling is applicable in this case because Mr. Tavares was lulled by the government into letting the filing deadline pass. See Bailey, 160 F.3d at 1365. I note that the mailing of a copy of an appeal is not inconsistent with Mr. Tavares' repeated statements, and the indications of all the hard facts in this case, that Mr. Padilla was assisting Mr. Tavares in filing his appeal.

. Although not dispositive in my opinion, Mr. Padilla did not document any of his conversations with Mr. Tavares even though apparently required to do so by the Veterans Benefits Administration's M21-1 Manual. Cf. Fugere v. Derwinski, 1 Vet.App 103, 107 (1990) (provisions in the M21-1 Manual that do not merely clarify or explain an existing rule or statute have the force of law); McCormick v. Gober, 14 Vet.App 39, 46-47 (2000) (substantive provisions in the M21-1 Manual are enforceable against the Secretary in this Court).

. Phone records submitted by Mr. Tavares show that he also called Mr. Padilla numer-ons times before and after these dates.