Milo E. DECKER and Karla K. Decker, Parents and Next Friends of Destry Decker, Petitioners,

v.

SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.

No. 90–1115 V, 90–1116 V.

United States Court of Federal Claims.

Dec. 14, 2001.

Robert T. Moxley, Cheyenne, Wyoming, for petitioners.

Mark William Rogers, Washington, D.C., with whom were Stuart E. Schiffer, Acting Assistant Attorney General, Helene M. Goldberg, Director, John Lodge Euler, Deputy Director, for respondent.

## OPINION

BUSH, Judge.

Petitioners bring this matter before the court to seek reconsideration of and relief from the judgment entered by the Clerk of the United States Court of Federal Claims in accordance with the special master's dismissal of petitioners' claim for compensation under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa–1 to 34 (the Vaccine Act) for the alleged vaccine-related injuries sustained by petitioners' twins, Destry and Damien Decker.[1] Petitioners also seek a new trial. For the reasons stated below, this court upholds the Clerk's entry of judgment.

---

1. Although this opinion is captioned with only the name of Destry Decker, this matter is applicable to both Destry and Damien Decker's (No. 90–1116V) suits. Since the issues at bar are the same for both cases, the court has only written one opinion, applicable to both matters.

## BACKGROUND

On April 30, 2001, the special master issued a decision dismissing petitioners' petition seeking compensation under the Vaccine Act. On May 31, 2001, the Clerk of this court received petitioners' motion for review of the special master's decision, one day beyond the 30-day statutory time period set forth in 42 U.S.C. § 300aa–12(e)(1) (1994). As the tendered motion for review was not received within the 30-day limit, it, along with petitioners' unopposed motion for leave to file an overlength memorandum of objections, was not filed by the Clerk, and the Clerk entered judgment in accordance with the special master's decision pursuant to 42 U.S.C. § 300aa–12(e)(3).

The papers received on May 31, 2001 were transmitted to the court for a ruling. On June 5, 2001, the court ordered that the papers received on May 31, 2001 be retained, unfiled, for 30-days pending any filing by petitioners for relief from judgment. On June 14, 2001, petitioners filed a Motion for Reconsideration, For Relief from Judgment, and For New Trial.

In support of their motion for reconsideration, petitioners submit that: (1) their motion for review was timely under Rule 6 of the Rules of the United States Court of Federal Claims (RCFC); (2) RCFC 60(b) and the "excusable neglect" standard is applicable to this matter; (3) equitable tolling is appropriate under the circumstances; and (4) a new trial is necessary to establish that compensation is appropriate. With regard to equitable tolling, petitioners submitted the declaration of Melissa K. Lasiter, an employee of petitioners' counsel, averring that one day before the expiration of the statutory time period, Ms. Lasiter sent petitioners' motion for review to the Clerk of this court via United Parcel Service (UPS). Ms. Lasiter states that after leaving work on May 29, 2001 at approximately 5:45 p.m., she intended to send petitioners' motion for review via a UPS drop box at the Cheyenne Airport. Upon arrival, an airport customer service representative informed Ms. Lasiter that the airport was no longer a UPS drop off point. Ms. Lasiter then telephoned UPS's toll-free number to locate another drop box. After telling the UPS representative that she needed a drop box where UPS picked up packages at or after 7:00 p.m., the UPS representative informed Ms. Lasiter of such a drop box located at 2310 West Lincolnway. Ms. Lasiter placed petitioners' motion for review in the Lincolnway dropbox shortly after 6:00 p.m. Ms. Lasiter states that she relied upon the UPS representative's statement that UPS would pick up petitioners' package that night, May 29, 2001. She further avers that if she had seen a posted sign denoting an earlier delivery time on the Lincolnway dropbox she would have telephoned UPS a second time. The carrier ultimately picked up petitioners' package the next day. UPS therefore failed to deliver petitioners' motion on May 30, 2001, and instead delivered it on May 31, 2001.

By order of this court, issued July 3, 2001, respondent filed a response to petitioners' motion for reconsideration on August 3, 2001. On August 20, 2001, to assist in the resolution of this matter, the court ordered petitioners to file additional documentary evidence in support of its equitable tolling argument and Ms. Lasiter's declaration.

Petitioners responded to this court's August 20, 2001 order on September 19, 2001. In this response, petitioners provided documentary evidence that: (1) petitioners' counsel chose to deliver petitioners' motion for review by UPS "Next Day Air"; (2) UPS guaranteed that the package would be delivered the next day; (3) Ms. Lasiter prepared a shipping label for the package on May 29, 2001; (4) the parcel containing the motion for review was picked up by UPS on May 30, 2001; (5) on May 30, 2001, the UPS "Pickup Manifest" (concerning petitioners' parcel) was received at 8:03 p.m.; and (6) on May 31, 2001, UPS delivered the package to this court at 10:08 a.m. As a result of the information obtained, petitioners conclude that since the UPS information is not specific regarding the pickup time of parcels, the UPS guarantee is a "blanket guarantee" with regard to all drop-off boxes. Petitioners' response also states that Ms. Lasiter was misled by the airport employee regarding whether UPS had discontinued the airport drop box as well as by the UPS representative who told her

that the Lincolnway drop box had a 7:00 p.m. pickup time. Neither petitioners' counsel nor the government, through UPS, was able to discover the name of the UPS representative who allegedly spoke with Ms. Lasiter.

This court, on September 20, 2001, ordered respondent to prepare a response to petitioners' September 19, 2001 submission. Respondent filed its response on October 9, 2001. In its response, respondent included a declaration by Sue Griess, a UPS Office Supervisor responsible for dispatches, claims, and general overview, among other things. Ms. Griess declares that: (1) the UPS letterbox located at 2310 West Lincolnway has a 5:00 p.m. pickup time, which is posted on the letterbox and which has not been altered during this calendar year; (2) UPS records indicate that a UPS representative picked up packages from the Lincolnway letterbox at 5:00 p.m. on May 29, 2001; (3) on May 30, 2001, UPS picked up packages from the Lincolnway letterbox again at 5:00 p.m.; (4) UPS has not discontinued the Cheyenne Airport letterbox and the daily scheduled time for the airport pickup is 7:00 p.m.; (5) on May 29, 2001, a UPS representative picked up packages from the Cheyenne Airport letterbox at 7:05 p.m.; (6) UPS posts all pickup times on its UPS letter boxes and UPS drivers scan a barcode label inside of the letterbox when packages are picked up, automatically entering the time of pickup in the UPS database; (7) the UPS toll-free number does not list the Lincolnway letterbox; however, after speaking with an operator, Ms. Griess was told that the Lincolnway letterbox posted a pickup time of 5:00 p.m.; (8) Ms. Griess was unable to identify or verify the UPS individual with whom Ms. Lasiter spoke on May 29, 2001; (9) the times listed on the UPS tracking receipts printed from UPS's internet website for the activity "pickup manifest received" do not reflect the time packages were picked up by a driver from the letterbox location where packages were placed; instead, they reflect the time that the driver's scanner is uploaded into the UPS system at UPS's central office after the packages have been dropped off at the airport; and (10) UPS keeps all of the actual pickup times of individual letterbox locations in its database.

On October 19, 2001, petitioners filed a reply to respondent's October 9, 2001 submission.

## DISCUSSION

### I. Motion for Review Procedure

Both the Vaccine Act and the rules of this court that cover the Vaccine Act set forth the procedure for obtaining review of a special master's decision. Section 12(e) of the Vaccine Act, entitled "Action by United States Court of Federal Claims," provides, in pertinent part:

(1) Upon issuance of the special master's decision, the parties shall have 30 days to file with the Clerk of the United States Court of Federal Claims a motion to have the court review the decision. . . .

(3) In the absence of a motion under paragraph (1) respecting the special master's decision or if the United States Court of Federal Claims takes the action described in paragraph (2)(A) with respect to the special master's decision, the Clerk of the United States Court of Federal Claims shall immediately enter judgment in accordance with the special master's decision.

42 U.S.C. § 300aa–12(e)(1), (3) (2001 Supp.).

Appendix J of this court's rules further speaks to the matter, providing in Rule 23 that a party must file a motion for review within 30 days after the special master's decision is filed, that no extensions of time are permitted, and that a party's failure to "timely file such a motion shall constitute a waiver of the right to obtain review." Mirroring the Vaccine Act, Appendix J, Rule 11(a), designated "Judgment," states that, in the absence of a motion for review within the prescribed time period, the Clerk of the court shall "enter judgment in accordance with the special master's decision."

### II. Rule 6 of the RCFC is inapplicable to the filing of a motion for review pursuant to Section 12(e) of the Vaccine Act.

■ Petitioners suggest that this court should ignore Federal Circuit precedent, as well as the opinions of this court, and apply

RCFC 6(c)[2] to this action. Specifically, petitioners contend that the matter before the court concerns a computation of time, as opposed to an extension of time because the special master's decision is not "issued" in accordance with section 12(e)(1) of the Vaccine Act unless it is "served." Petitioners rely upon a statutory analysis which concludes that the plain language of the word "issuance" as well as the Congressional use of the word, contemplate both the filing of the decision and its service, i.e., "distribution." Petitioners come to the conclusion that since the special master's decision is filed and then sent to the parties via regular postal service mail, it must be "served" and thus, Rule 6 applies and three additional days should be added to the time period in which a motion for review must be filed by a petitioner in this court. Petitioners' argument is unavailing.

The Federal Circuit has previously determined that "issuance" of a special master's decision occurs when the decision is filed with the Clerk of the Court of Federal Claims. In *Hervey v. Sec'y of Health and Human Servs.*, 88 F.3d 1001 (Fed.Cir.1996), *cert. denied, Hervey v. Shalala*, 519 U.S. 1010, 117 S.Ct. 515, 136 L.Ed.2d 404 (1996), after a review of the common meaning of the term "issue," and the Federal Circuit's prior decision in *Widdoss v. Sec'y of the Dep't of Health & Human Servs.*, 989 F.2d 1170 (Fed. Cir.1993), *cert. denied, Widdoss v. Shalala*, 510 U.S. 944, 114 S.Ct. 381, 126 L.Ed.2d 331 (1993), the court opined:

> To be sure, the term 'issuance,' as used in section 12(e)(1), could be accorded several slightly different meanings. For example, it could be interpreted to mean rendition, to mean public announcement, or to mean formal filing with the Clerk of the court. Rule 23 of the Vaccine Rules, R.Ct.Fed.Cl., Appendix J, interprets the term 'issuance' to mean filing, so that the 30–day review period begins to run when the special master's decision is filed with the Clerk of the Court of Federal Claims. That interpreta-

tion is a reasonable one, and it has the virtue of providing an unambiguous and well-documented starting point for the 30–day period.

> That interpretation of the term 'issuance' is consistent with this court's decision in the *Widdoss* case.

*Hervey*, 88 F.3d at 1002.

In *Widdoss*, the Federal Circuit addressed the matter of when a special master's decision is "issued" in the context of whether a special master's power to suspend a case in order to extend the deadline for issuance of a decision affects the date a special master's decision is "issued." *Widdoss*, 989 F.2d at 1175–76. With regard to section 12(d)(3)(A) and 12(e)(1) of the Vaccine Act, the court stated that the sections "evidence[d] that the proceedings on a petition conclude with the special master's final act of 'issu[ing] a decision on the petition,' at which time the clock measuring the time for filing a motion to review the special master's decision begins to run." *Id.* at 1175. The court was also influenced by the fact that the Vaccine Act clearly expressed that its purpose is to resolve petitions in an expeditious manner. *Id.* at 1175–76.

The Federal Circuit's decisions in both *Hervey* and *Widdoss* demonstrate that "issuance" of a special master's decision does not require both filing and service, as petitioners contend. Instead, once a special master files a decision with the Clerk, the statutory period set forth in Section 12(e)(1) begins to run. Since a special master's decision is not required to be "served" before it is considered "issued," Rule 6(c) has no bearing upon the limitations period set forth in section 12(e)(1) of the Vaccine Act. *See also Taylor v. Sec'y of Health and Human Servs.*, 34 Fed.Cl. 137, 139–40 (1995) (relying on *Widdoss* to find that neither Rule 6 nor Rule 60(b)(1) can be used to excuse an untimely filed motion for review in light of *Widdoss's* finding that the 30–day statutory period in section 12(e)(1) is

---

2. Rule 6(c) of the RCFC states, in pertinent part:
   (c) **Additional Time After Service.** Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a paper, and the service is made other than by hand on the same day, 3 calendar days shall be added to the prescribed period except that no days shall be added when a date or time limitation is set by a court order.

jurisdictional and Rule 60(b) cannot be used to escape a jurisdictional limitation).

## III. Rule 60(b) cannot be invoked to escape the jurisdictional limitation of section 12(e)(1).

■ Petitioners contend that Rule 60(b)'s "excusable neglect" standard applies in this instance.[3] It is well-established that Rule 60(b) cannot be used to toll, extend, or waive the time period in which a petitioner must file a motion for review pursuant to section 12(e)(1) of the Vaccine Act. *Widdoss*, 989 F.2d at 1178 (citations omitted); *Gilbert by Gilbert v. Sec'y of Health and Human Servs.*, 51 F.3d 254, 257 (Fed.Cir.1995); *Patton v. Sec'y of Health and Human Servs.*, 25 F.3d 1021, 1028–29 (Fed.Cir.1994); *Bailiss v. Sec'y of the Dept. of Health and Human Servs.*, 37 Fed.Cl. 64, 66 (1996); *Taylor*, 34 Fed.Cl. at 139–40; *Donovan v. Sec'y of the Dept. of Health and Human Servs.*, 28 Fed. Cl. 459, 461 (1993), *aff'd*, 17 F.3d 1442 (Fed. Cir.1994) (Table).

In *Widdoss*, the seminal case on this issue, the Federal Circuit reasoned that section 12(e)(1) sets forth a jurisdictional limitation in restricting a petitioner's period for filing a motion for review to thirty days. *Widdoss*, 989 F.2d at 1177–78. This jurisdictional limitation, the court found, overcomes any court rule because " 'an authority conferred upon a court to make rules of procedure for the exercise of its jurisdiction is not an authority to enlarge its jurisdiction.' " *Id.* at 1177 (quoting *United States v. Sherwood*, 312 U.S. 584, 589–90, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941)).[4] Hence, Rule 60(b) cannot be used to enlarge the jurisdictional limitation set forth in section 12(e)(1) of the Vaccine Act, and this court therefore declines to provide relief to petitioners pursuant to Rule 60(b).

## IV. Equitable tolling does not apply to the Vaccine Act.

■ Petitioners assert that equitable tolling may be applied to section 12(e)(1) of the Vaccine Act and that it is also appropriate in this instance, given the circumstances under which petitioners' motion for review failed to arrive for filing in this court by the statutory deadline. In support of their argument, petitioners rely upon *Raspberry v. Sec'y of Dept. of Health and Human Servs.*, 32 Fed. Cl. 777 (1995) wherein this court applied the doctrine of equitable tolling to section 12(e)(1). In opposition, respondent contends that the holding in *Raspberry* no longer has value as precedent in light of *Brice v. Sec'y of Health and Human Servs.*, 240 F.3d 1367 (Fed.Cir.2001), and thus, section 12(e)(1) of the Vaccine Act is not subject to equitable tolling. Petitioners rejoin, arguing that *Brice* only addresses the narrow question of whether the statute of limitations for *filing a petition* in post-Act cases, as set forth in section 16(a)(2), is subject to equitable tolling. Petitioners contend that *Brice* is inapplicable because there are different policy considerations and legislative intent governing the strict initial filing of a petition under the Vaccine Act as opposed to the review of a special master's decision, since determining the time of onset of a vaccine injury requires witnesses with fresh memories, etc., whereas such considerations are unnecessary in the review of a static record. Petitioners also suggest that this case is more analogous to the Federal Circuit opinion in *Bailey v. West*, 160 F.3d 1360 (Fed.Cir.1998) (*en banc*) which the Federal Circuit briefly addresses in *Brice*. Petitioners contend that the Veterans Program at issue in *Bailey* is akin to the Vaccine Program in that both programs

---

**3.** RCFC 60(b) allows this court to "relieve a party or the party's legal representative from a final judgment, order, or proceeding" for mistakes, inadvertence, excusable neglect, and newly discovered evidence, among other things.

**4.** In *Patton*, 25 F.3d at 1028–29, the Federal Circuit stated "[o]ur holding in *Widdoss* that Rule 60(b) cannot be used to circumvent the Vaccine Act's express procedure for seeking review of the merits of a special master's decision is consistent with the settled principle that the rule is not to be used as a substitute for an

appeal." However, the court did agree with the trial court that "the 30-day time limit of section 300aa–12(e)(1) presents no jurisdictional bar to the court's consideration of a Rule 60 motion where the movant does not seek review of the merits of the special master's decision, but rather requests correction of an error of the court." Here, petitioners are seeking a review of the merits of the special master's decision; therefore, the exception set forth in *Patton* is inapplicable to the matter at hand.

were created to benefit rather than limit the parties who might file suit pursuant to the respective statutes. In support of this contention, petitioners point to the legislative history of the Vaccine Act which indicates that children injured by vaccines are comparable to veterans.

In *Raspberry,* the court was faced with circumstances analogous to the facts presented in the instant case. In that case, the petitioner's motion for reconsideration of the special master's decision did not reach the Clerk of the court until one day beyond the statutory time period prescribed in section 12(e)(1) because of the failure of the established carrier. This court found that the 30–day statutory time period for filing a motion for review of a special master's decision pursuant to section 12(e)(1) of the Vaccine Act is subject to equitable tolling and that under the circumstances presented, equitable tolling was warranted.

In reaching that conclusion, this court looked to the Supreme Court's decisions in *Irwin v. Dept. of Veterans Affairs,* 498 U.S. 89, 95–96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) and *Lampf v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) as well as the Claims Court's decision in *Smith v. Secretary, HHS,* 26 Cl.Ct. 116, 119 (1992). The court noted that in *Irwin,* the Supreme Court found that there is a presumption that equitable tolling may be applied in suits against the federal government because such a presumption "is 'likely to be a realistic assessment of legislative intent as well as a practically useful principle of interpretation.'" *Raspberry,* 32 Fed.Cl. at 779 (quoting *Irwin,* 498 U.S. at 95, 111 S.Ct. at 457). The court further noted that courts have determined that the presumption of equitable tolling may be rebutted "when the language of a particular statute indicates that Congress intended the limitation period therein to be absolute and not subject to tolling." *Id.* In support of this conclusion, the court relied upon *Lampf* wherein the Supreme Court held that courts "cannot toll the statute of limitations applicable to the commencement of suits under the Securities Exchange Act of 1934" because " '[t]he 1–year period, by its terms, begins after discovery of

the facts constituting the violation, making tolling unnecessary. The 3–year limit is a period of repose inconsistent with tolling.'" *Id.* (citing *Lampf,* 501 U.S. at 363, 111 S.Ct. at 2782). The court also pointed to *Smith v. Secretary, HHS,* where the Claims Court held that the 28–month statute of limitation period for commencing Vaccine Act suits could not be tolled because such tolling "would be inconsistent with congressional intent" since Congress established the limitations period as "an outer limit on the amount of time allowed for initiating a claim under the Vaccine Act." *Raspberry,* 32 Fed.Cl. at 779 (citing *Smith,* 26 Cl.Ct. at 119 & n. 4).

Given this review, the *Raspberry* decision determined that section 12(e)(1) was subject to equitable tolling for several reasons. First, section 12(e)(1) is different from the statute of limitations applicable in both *Lampf* and *Smith,* which had a one to three-year limitations period and a 28–month limitations period, respectively. *Raspberry,* 32 Fed.Cl. at 779. The court concluded that such time periods, as stated in *Lampf,* permit "repose" and thus tolling is unnecessary. The court went on to state that such is not the case with regard to section 12(e)(1), which requires petitioners to complete "significant" and "time-consuming tasks" within its 30–day time period. *Id.* Second, the statute of limitations set forth in section 12(e)(1) involves seeking a review of a special master's decision as opposed to the initial filing of an action, each circumstance involving different concerns. *Id.* at 780. Third, the legislative history of the Vaccine Act indicates that Congress wanted petitions to be resolved expeditiously and "to benefit petitioners rather than to limit their rights." *Id.* Finally, the *Raspberry* court distinguished the *Widdoss* case and found that the majority opinion in *Widdoss* addressed "whether the court had the authority to *waive* rather than to *toll* the 30–day period in Section 12(e)(1)." *Raspberry,* 32 Fed.Cl. at 781 (citing *Widdoss,* 989 F.2d at 1172) (emphasis in original).

In *Brice v. Sec'y of Health and Human Servs.,* 240 F.3d 1367 (Fed.Cir.2001), which was decided after *Raspberry,* the Federal Circuit held that equitable tolling was not

available in filing a petition for a post-Act case arising under section 16(a)(2) of the Vaccine Act. Although in *Weddel v. Sec'y of Health and Human Servs.*, 100 F.3d 929 (Fed.Cir.1996) the Federal Circuit determined that equitable tolling was not available for claims in pre-Act cases, the Federal Circuit, in *Brice*, found that *Weddel* had not resolved the issue of whether equitable tolling was available in post-Act cases. *Brice*, 240 F.3d at 1371. Thus, the court was faced with the issue of how to reconcile *Irwin* and its conclusion that there is a presumption of equitable tolling with the Supreme Court's decision in *United States v. Brockamp*, 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997), which demonstrated that equitable tolling could be rebutted. *Id.* at 1370–71.

The Federal Circuit noted that in *Brockamp*, the Supreme Court rejected equitable tolling because: (1) "the tax statute set forth its limitations in 'a highly detailed technical manner that … cannot be easily read as containing implicit exceptions;'" (2) the statute restated the statute of limitations several times, in different ways; (3) the statute enumerated specific exceptions to the statute of limitations, not including equitable tolling; and (4) "the Court pointed to the underlying subject matter of tax collection as inconsistent with the case-specific exceptions of equitable tolling." *Brice*, 240 F.3d at 1370–71 (citing *Brockamp*, 519 U.S. at 352, 117 S.Ct. at 849; *United States v. Beggerly*, 524 U.S. 38, 48–49, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998)). The court also noted that it had reconciled *Irwin* and *Brockamp* in both *Bailey v. West*, 160 F.3d at 1362–68 and *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461–63 (Fed.Cir.1998). In *Bailey*, the Federal Circuit permitted equitable tolling of the time for appeal of a Board of Veterans' Appeals decision since none of the *Brockamp* factors were present in that case. *Brice*, 240 F.3d at 1371 (citing *Bailey*, 160 F.3d at 1365). In *RHI Holdings*, the Federal Circuit rejected equitable tolling because the limitations period at issue was similar to that in *Brockamp* and met all of the factors that influenced the Supreme Court's analysis in *Brockamp*. *Id.* (citing *RHI Holdings*, 142 F.3d at 1462).

In *Brice*, despite the fact that the statute did not meet three of the factors important in *Brockamp*, the Federal Circuit focused upon the fact that the Vaccine Act included "a specific exception from the limitations period for a petition improperly filed in state or federal court" and that the "limitations period is part of a detailed statutory scheme which includes other strict deadlines." *Id.* at 1372–73. With regard to the statutory scheme, the court reviewed the legislative history, stating that equitable tolling would conflict with Congress' intent to provide a quick resolution of claims. *Id.* at 1373. Also, in noting that the Brices had been involved in litigation regarding the untimely filing of their petition, the court opined that "[l]engthy collateral litigation is directly inconsistent with Congress's objective in the Vaccine Act to settle claims quickly and easily." *Id.*

This court rests its judgment in this case upon *Brice* rather than either *Raspberry* or *Bailey* for several reasons. While *Raspberry* is factually analogous to the instant matter, it appears that in *Brice*, the Federal Circuit has questioned the reasoning in *Raspberry* although the court does not directly address *Raspberry* or a motion for review of a special master's decision in its opinion. As stated, in *Raspberry*, three factors influenced the court's decision: (1) section 12(e)(1) is not a statute in repose; (2) there are different concerns present in the initial filing of a petition than in the filing of a motion for review; and (3) the legislative history of the Vaccine Act indicates that the expeditious resolution of vaccine claims is to benefit petitioners rather than to limit them. *Raspberry*, 32 Fed.Cl. at 779–80. *Brice* does not address section 12(e)(1) nor the policy considerations present in filing a petition as opposed to a motion for review. However, of particular significance is *Brice's* discussion of the legislative history of the Vaccine Act. Irrespective of the fact that the Vaccine Act, in particular section 16(a)(2), did not meet the factors analyzed in *Brockamp*, the Federal Circuit, in *Brice*, determined that two factors were overwhelmingly decisive in its determination to disallow an equitable tolling of the statutory period—the Act's inclusion of exceptions to the limitations period for filing

a petition and the detailed statutory scheme. *Brice*, 240 F.3d at 1373.

In addressing the statutory scheme, the court noted that there were strict deadlines throughout the Vaccine Act, not simply section 16(a)(2). Furthermore, in its overall review of the legislative history of the Vaccine Act, the Federal Circuit did not limit its findings to the filing of petitions under the Act. This finding is not only supported by the court's reading of the majority opinion in *Brice*, but also by our reading of the dissenting opinion. The dissent makes a broad statement concerning equitable tolling and the Vaccine Act. In rebutting the majority's findings, the dissent states that "[t]he ruling that equitable tolling can never be invoked in Vaccine Act cases is directly contrary to the holding in *Irwin* that equitable tolling is as available against the government as it would be in private litigation of the cause." *Id.* at 1375.

It is also significant that the Federal Circuit's reading of the legislative history does not reach the same conclusion as that set forth in *Raspberry*. While the Federal Circuit, like the court in *Raspberry*, noted that the Vaccine Act emphasizes the quick resolution of claims and that petitions must be resolved expeditiously, the Federal Circuit does not state that this intention to benefit petitioners warrants equitable tolling under the Vaccine Act. Rather, the Federal Circuit noted that Congress determined that petitions must be resolved expeditiously to aid in the " 'speed and reliability with which the petitioner can expect judgment.' " *Brice*, 240 F.3d at 1373 (quoting H.R.Rep. No. 99–908, at 17, *reprinted in*, 1986 U.S.C.C.A.N. at 6358). The Federal Circuit found that equitable tolling would interfere with the end envisioned by Congress—the quick resolution of Vaccine Act claims.[5] *Id.* at 1373–74. Given the Federal Circuit's review of the

legislative history of the Vaccine Act as a whole and its determination that the legislative history indicates that equitable tolling is not at all applicable to the Vaccine Act, this court must conclude that the Federal Circuit, in *Brice*, effectively rebuts this court's interpretation of the Vaccine Act's legislative history set forth in *Raspberry*.

Moreover, although in *Brice* the Federal Circuit pointed to *Bailey v. West* as an instance where the court was required to reconcile the propositions of *Irwin* and *Brockamp*, the court found that the reasoning in *Bailey* did not apply to the Vaccine Act. In *Bailey*, the petitioner relied upon the Veterans Benefits Officer's statement that she would file his appeal of his Board of Veterans' Appeals decision to the Court of Veterans Appeals within the prescribed limitation period. *Bailey*, 160 F.3d at 1364. The Federal Circuit allowed equitable tolling of the time for Bailey's appeal. *Id.* at 1368. The court based its ruling upon the fact that, prior to the Veterans' Judicial Review Act, the Veterans Program was " 'a nonadversarial, *ex parte*, paternalistic system' " which was uniquely beneficial and that Bailey's reliance upon this paternalistic system, "presumably lulled him into accepting and relying upon the advice and aid of the government." *Bailey*, 160 F.3d at 1365, 1368. Such a situation, the court found, was akin to grounds that would warrant equitable tolling in a private suit. *Id.* at 1365. The court also found, after reviewing post-*Irwin* cases, that this presumption of equitable tolling was not rebutted by Congress since "[n]one of the reasons for restricting application of equitable tolling" were present in that case. *Id.* at 1368. In *Brice*, in response to the petitioners' argument that the Vaccine Act should be likened to the Veterans Act because of the benevolent nature of both programs, the Federal Circuit stated that it had "already

---

5. In *Brice*, the Federal Circuit also noted that equitable tolling invites prolonged and wasteful collateral litigation concerning the running of the statute of limitations. *Brice*, 240 F.3d at 1373. Indeed, petitioners' counsel has also contributed to such collateral litigation. There have been at least two instances other than the one currently before the court in which Mr. Moxley has filed a motion for review of a special master's decision beyond the prescribed statutory time limitation

and has relied upon equitable tolling to support a claim for relief from this court's judgment in accordance with section 12(e)(3) of the Vaccine Act, thus presenting what appears to be an unfortunate pattern of such collateral litigation. *See Copeland, et al. v. Sec'y of Dept. of Health and Human Servs.*, Case No. 90–867 and *Moody, et al. v. Sec'y of Dept. of Health and Human Servs.*, Case No. 91–393.

rejected the notion that the [Vaccine] Act's purposes mandate the allowance of equitable tolling." *Brice*, 240 F.3d at 1373 (citing *Weddel*, 100 F.3d at 932). Thus, despite petitioners' argument that the Vaccine Act is akin to the Veterans Act and therefore, equitable tolling should be applied, petitioners' contention must be rejected in light of the Federal Circuit's specific objection to the same argument.

Finally, petitioners overlook the fact that *Brice* as well as *Weddel* specifically discuss whether equitable tolling applies to post-Act cases and pre-Act cases, respectively, and that both of these cases were published after *Raspberry*. Thus, both *Brice* and *Weddel* gave the Federal Circuit an opportunity to address equitable tolling and its effect on the Vaccine Act, with the result that the Federal Circuit, through these opinions, effectively overruled this court's opinion in *Raspberry*.

In light of the above, this court must conclude that equitable tolling does not apply to section 12(e)(1) of the Vaccine Act.

**V. Were section 12(e)(1) subject to equitable tolling, equitable tolling would not be available under the facts presented.**

Even if section 12(e)(1) were subject to equitable tolling, equitable tolling would not be warranted under the circumstances presented by petitioners. Petitioners submitted Ms. Lasiter's declaration as well as supplemental evidence regarding the shipping of their motion for review. Ms. Lasiter explained that on May 29, 2001, one day before the statutory deadline, an airport employee misled her into believing that UPS no longer had a 7:00 p.m. drop box at the Cheyenne Airport and that she relied on a UPS representative's erroneous statement that there was a 7:00 p.m. drop box on Lincolnway street. Also, petitioners submitted evidence that UPS did not pick up petitioners' package until May 30, 2001, the day the package was to reach this court in order to meet the statutory deadline. Petitioners' evidence consisted primarily of information downloaded from the UPS internet website, Ms. Lasiter's declaration, and petitioners' shipping labels and receipt.

To rebut petitioners' evidence, respondents submitted the declaration of Sue Griess, a UPS supervisory employee. Most importantly, Ms. Griess attests that: (1) the UPS drop box at Cheyenne Airport remains in operation and was operative at the airport on May 29, 2001; (2) the Lincolnway letterbox had a *posted* pickup time of 5:00 p.m.; (3) when she made a test call to the UPS toll-free number, the representative stated that the Lincolnway letterbox has a pickup time of 5:00 p.m.; (4) UPS made its scheduled pickup from the Lincolnway box on May 29, 2001 at 5:00 p.m. and did the same on May 30, 2001; (5) the Pickup Manifest receiving time reflects the time that the packages have been dropped off at the airport rather than when the packages were picked up by the UPS representative; and (6) the UPS database system serves as a repository for, *inter alia*, the above-listed information.

Ms. Griess' declaration demonstrates that even though Ms. Lasiter placed the package into the Lincolnway box on May 29, 2001, before the statutory deadline, since it was placed in the drop box after the posted pickup time, the package would not have been picked up until the next day, May 30, 2001, at the scheduled time of 5:00 p.m. Ms. Griess' declaration, as well as petitioners' evidence, demonstrates that UPS did indeed pick petitioners' package up from the Lincolnway letterbox at 5:00 p.m. on May 30, 2001 and that, as guaranteed, UPS delivered the package to this court the next day, May 31, 2001.

Unlike in *Raspberry*, petitioners' evidence does not demonstrate that they exercised due diligence. In *Raspberry*, the court determined that the petitioner acted in a diligent manner in securing delivery by an established overnight carrier that guaranteed overnight delivery but which failed to live up to its guarantee. *Raspberry*, 32 Fed.Cl. at 782. Nothing in this case indicates that UPS failed to fulfill its guarantee or that UPS is responsible for the failure of petitioners' motion for review to arrive at this court within the prescribed limitations period. The submitted evidence shows that even if Ms. Lasiter had been misled by the UPS representative during their telephone conversation, Ms. Lasiter had an opportunity, as a result of the

 

Lincolnway letterbox posting, to discover that the Lincolnway letterbox did not have a 7:00 p.m. pickup time. Instead, Ms. Lasiter overlooked the posted pickup time on the Lincolnway letterbox. Although it would have been an inconvenience to discover that the Lincolnway letterbox did not have a pickup time of 7:00 p.m., Ms. Lasiter should still have had time to find another dropbox with the 7:00 p.m. pickup time since, according to her declaration, Ms. Lasiter placed petitioners' motion for review into the Lincolnway letterbox shortly after 6:00 p.m. However, Ms. Lasiter states that she did not see the posted pickup time. Thus, she did not call UPS again. While it is unfortunate that Ms. Lasiter failed to observe the posted pickup time on the Lincolnway letterbox, petitioners in no way demonstrate that Ms. Lasiter's failure to see the posted pickup time on the Lincolnway letterbox is the fault of UPS.

Also, the particular circumstances of Ms. Lasiter's reliance on the UPS representative and the airport employee distinguishes these circumstances from those present in *Bailey*. First, Ms. Lasiter relied upon erroneous information from an airport employee, an individual who is not an agent of UPS, the chosen carrier. It was that inaccurate information which initiated this sequence of unfortunate events and it was Ms. Lasiter's choice to rely upon an extraneous party who had no obligation to her or to petitioners. Furthermore, Ms. Lasiter did not have to solely rely upon the UPS representative with regard to the pickup time for the Lincolnway letterbox. The pickup time was posted on the letterbox and any incorrect statement by the UPS representative could have been easily determined prior to depositing the package.

Given this evidence, petitioners cannot place the failure of their package to reach this court within the statutory deadline upon UPS. Rather, it was the actions of petitioners' representatives that significantly contributed to the failure of the petitioners to meet the statutory deadline. *See also* footnote 6. As such, equitable tolling would not be warranted.[6]

---

**6.** As the court has determined that petitioners' arguments seeking to extend or toll the statute of limitations fail, it is unnecessary for this court to

## VI. Conclusion

For the reasons set forth above, petitioners' Motion for Reconsideration, For Relief from Judgment, and For New Trial is **DENIED**. No costs.

**IT IS SO ORDERED.**

reach the issue of whether this court can grant a new trial.