**Curtis J. McNARON, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

**No. 93–474.**

United States Court of Appeals for Veterans Claims.

April 14, 1999.

Before NEBEKER, Chief Judge, and FARLEY and STEINBERG, Judges.

## ORDER

PER CURIAM:

■ On September 24, 1998, the pro se appellant filed a motion to reinstate his appeal, alleging that this Court erred when it "presumed regularity in DVA performance of it[ ]s duties in mailing." A similar motion was denied by this Court in *McNaron v. Brown*, 10 Vet.App. 61 (1997) (*McNaron I* ). When an appellant moves to reinstate an appeal, the Court must first determine whether a recall of the Court's mandate is warranted.

■ While the appellant's most recent motion was pending, the United States Court of Appeals for the Federal Circuit (Federal Circuit) determined that the doctrine of equitable tolling was available to toll the statute of limitations for filing a Notice of Appeal (NOA) to this Court under 38 U.S.C. § 7266. *Bailey v. West*, 160 F.3d 1360 (Fed.Cir.1998). In an order dated November 30, 1998, the Court asked the Secretary to address any significance the Secretary believed the *Bailey* decision may have on this matter. On February 3, 1999, the Court extended the time for the Secretary to file his response until February 13, 1999. Since that time, the Secretary has requested two additional extensions of time. The Secretary submitted his response on February 19, 1999. The Court will grant the additional requests for extension of time and file the Secretary's response as of the date it was received.

In his response, the Secretary has indicated his belief that the *Bailey* decision has no application given the circumstances of this case. The Secretary suggests, however, that the Court's decision in *Cross v. Brown*, 9 Vet.App. 18 (1996), may be of significance here. In *Cross*, the Court applied the rule of constructive notice to address-change information submitted to VA. The Secretary further suggests that the Court's decision in *Cross* does not warrant a recall of the Court's mandate and a reinstatement of the appeal. The appellant filed a reply on March 1, 1999, contending that "the Secretary's arguments demonstrate DVA's attitude and actions toward[ ][his] claim from the start."

The appellant was directed in June 1993 to show cause why his appeal should not have been dismissed for lack of jurisdiction. The appellant responded that he did not receive the BVA decision until April 1993 and that, if VA had not misdiagnosed his condition, causing him to be unemployed, homeless, and to need to travel to seek employment, he would

**336**

have received the BVA decision "on time to file a timely appeal." The Court dismissed the appeal for lack of jurisdiction in July 1993. Thereafter, in a motion for review, the appellant contended that "due to [his] period of unstableness, [he] did not receive the Board's decision (dated August 31, 1992) until May 1993." Then, the appellant sought, to no avail, judicial relief by the U.S. Court of Appeals for the Fourth Circuit, the Federal Circuit, and the Supreme Court. After the Supreme Court denied the appellant's writ of certiorari, this Court issued its mandate in 1994.

In May 1996, the appellant then sought further review by this Court in his first request to recall mandate and reinstate his appeal. On January 17, 1997, the Court determined that no exceptional circumstances existed to justify recall of the mandate and denied the appellant's request. The Court found: "There is nothing to suggest that the newly submitted evidence was unavailable to the appellant at the time of the dismissal of his appeal. In fact, the only error that can be found is the appellant's failure to present the evidence when he had the opportunity to do so and the Court was authorized to consider it." *McNaron I,* 10 Vet.App. at 64. The Court explained that "[e]xtraordinary relief cannot be used as a device for granting a late rehearing, even if the Court 'becomes doubtful of the wisdom of the decision that has been entered and become final.'" *Id.* (citing *Greater Boston Television Corp. v. FCC,* 463 F.2d 268, 277 (D.C.Cir.1971)); *see also Johnson v. Bechtel Associates Professional Corp.,* 801 F.2d 412, 416 (D.C.Cir.1986).

■■■ The power of this Court to recall its mandate "can be exercised only in extraordinary circumstances.... The sparing use of the power demonstrates it is one of last resort, to be held in reserve against grave, unforeseen contingencies." *Calderon v. Thompson,* 523 U.S. 538, ——, 118 S.Ct. 1489, 1498, 140 L.Ed.2d 728 (1998). "The limited nature of this power is a reflection of the importance of finality: once parties are afforded a full and fair opportunity to litigate, the controversy must come to an end and courts must be able to clear their dock-

ets of decided cases." *Ute Indian Tribe of the Uintah and Ouray Reservation v. Utah,* 114 F.3d 1513, 1522 (10th Cir.1997); *see also American Iron & Steel Inst. v. EPA,* 560 F.2d 589, 592 (3rd Cir.1977) ("[P]arties should be afforded ample opportunity to litigate their claims, but once a final disposition is reached they should not expect that the good offices of the court will be available for a chance to press their claims anew."). This motion does not present the type of exceptional or extraordinary circumstances necessary to override the strong policy of repose and finality. *Greater Boston Television Corp.,* 463 F.2d at 278–79. The appellant was afforded an opportunity to be heard concerning the issue of whether the Court lacked jurisdiction over his appeal, and the appellant was heard on that subject. The Court rendered a decision adverse to the appellant. On two occasions subsequent to the decision, the appellant has sought to have this Court recall its judgment and mandate based on evidence that was available to him when the Court rendered its original decision dismissing his appeal. The Court declined to recall its mandate in *McNaron I,* and it will decline to do so now.

Even if the Court were to apply *Bailey* to the facts here, this case would not avail itself of equitable tolling. This case amounts to "at best a garden variety claim of excusable neglect" to which the principles of equitable tolling do not extend. *Bailey v. West,* 160 F.3d at 1365; *see also Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (equitable relief is extended sparingly, where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where he has been induced or tricked by his adversary's misconduct, but not generally where the claimant has failed to exercise due diligence in preserving his legal rights). Moreover, balanced against the countervailing concerns of repose and preservation of finality in judicial proceedings, and taken in light of the facts of this case, the concerns of repose and preservation triumph over the application of *Bailey* and preclude this Court from granting a motion to recall its mandate and reinstate the appeal. The Court's original decision dismiss-

ing the appeal shall not be disturbed. Accordingly, it is

ORDERED that the appellant's motion is denied.

STEINBERG, Judge, concurring in the result:

I join in the Court's conclusion that the appellant has not presented a valid basis for the Court to recall its mandate. However, I cannot join in the order as written because it fails to set forth any of the salient facts, now conceded by the Secretary, which the Court has found insufficient to support the extraordinary relief that the appellant seeks once again.

I write separately because I do not believe that it is enough for the Court to state its conclusion without any factual analysis in support thereof, especially under the circumstances present here. Those circumstances are: (1) the Court is interpreting and applying a very recent decision by the U.S. Court of Appeals for the Federal Circuit (Federal Circuit), i.e., *Bailey v. West*, 160 F.3d 1360 (Fed.Cir.1998) (en banc); (2) the Court has considered *Bailey* only once before, in *Shepard v. West*, 12 Vet.App. 107 (1998) (per curiam order), in which the Court applied the facts to the law of equitable tolling as the basis for its conclusion that *Bailey* did not apply; and (3) the *Bailey* opinion itself remanded the matter therein to this Court for an application of the facts to the law of equitable tolling, *see Bailey*, 160 F.3d at 1368; *see also Bonneville Associates, Limited Partnership v. Barram*, 165 F.3d 1360, 1366 (Fed.Cir.1999) (noting that in *Bailey* the Federal Circuit "did not hold that the limitations period should be equitably tolled in Bailey's case, but merely remanded the case to the Court of Veterans Appeals to determine that question"). I believe that the majority leaves the parties and the public with the impression that we believe that they should trust that we analyzed the matter sub silentio, leaving them to guess as to our rationale.

The Secretary's February 19, 1999, response in this case (to which a Preliminary Record [hereinafter "R."] is attached), concedes that the Board of Veterans' Appeals (Board or BVA) mailed its decision to the appellant at the incorrect address by indicating (Response at 3) that a Department of Veterans Affairs (VA) regional office (RO) had received notice of his correct address before the Board made the mailing. *See Cross v. Brown*, 9 Vet.App. 18, 20 (1996) (per curiam order) (holding that change-of-address information sent to VARO was within Secretary's control and therefore was before the BVA prior to issuance of BVA decision). The chain of address-related events appears to be as follows, concerning two Virginia addresses (Ritter St. and Leicester Rd.) and one Florida address:

6/91  RO mails correspondence to appellant at Ritter St. address. R. at 3, 5

9/91  Appellant mails correspondence to RO that indicates Florida address. R. at 7.

11/91  RO mails correspondence to appellant at Florida address. R. at 9.

12/91  Appellant mails correspondence to RO that indicates Leicester Rd. address. R. at 16.

2/92  RO mails correspondence to appellant at Leicester Rd. R. at 19.

5/92  Appellant mails correspondence to BVA, care of RO, that indicates Ritter St. address. R. at 28a.

8/92  BVA decision apparently sent to Leicester Rd.; Secretary does not provide in the preliminary record a document showing this. He thus, apparently, concedes the point.

10/92  RO mails correspondence to appellant at Ritter St. R. at 33.

3/93  Appellant mails correspondence to RO that indicates Ritter St. address.

R. at 36.

3/93  RO mails correspondence to appellant at Leicester Rd. R. at 39.

5/93  RO readdresses and remails above 8/93 document to Ritter St. R. at 39.

Although conceding that the BVA decision was mailed to the incorrect address for the appellant (the RO having received notice of a new address), *see Cross, supra,* the Secretary does not indicate that the BVA decision was remailed to him at the correct (or to any)

address, as had occurred in May 1993 when, apparently, the original copy of RO correspondence mailed to him was returned to sender. R. at 39.

As noted by the majority, *ante* at 335, the instant motion is not the first time that this appellant has sought reinstatement of his appeal. *See McNaron v. Brown*, 10 Vet.App. 61 (1997). I believe that, had the appellant, when he first sought reinstatement in May 1996, *id.* at 62, come forward with the allegation that he now makes in the instant motion, and had the above factual information been made available to the Court by the Secretary, as here, in response to such an allegation, the Court's prior decision might have been different. At that time, the Court held as follows:

> The appellant has failed to establish any special circumstances that would justify the recall of the Court's mandate. There is no evidence that the judgment was obtained by fraud on the part of the Secretary. *The appellant does not argue that any ministerial error led to the adverse decision*, or that the law or circumstances have changed in any way that would warrant the recall. There is nothing to suggest that the newly submitted evidence was unavailable to the appellant at the time of the dismissal of his appeal. In fact, the only error that can be found is the appellant's failure to present the evidence when he had the opportunity to do so and the Court was authorized to consider it.

*McNaron*, 10 Vet.App. at 64 (emphasis added). Clearly, had the Court known of the ministerial error that caused the Board to mail its decision to the incorrect address, the emphasized statement in the above passage from *McNaron* would not have been accurate.

Against this factual background, I concur with the Court's order in this matter, which sets forth legal reasons why the appellant's instant motion must be denied at this extraordinarily late stage. " 'There is nothing to suggest that the newly submitted evidence was unavailable to the appellant at the time of the dismissal of his appeal. In fact, the only error that can be found is the appellant's failure to present the evidence when he

had the opportunity to do so and the Court was authorized to consider it.' " *Ante* at 336 (quoting *McNaron, supra*). There appears to be no reason why the appellant could not have made the instant allegation at the time of his prior motion to reinstate his appeal. In the Court's prior opinion, we noted: "The Secretary filed a response on September 27, 1996, in which he asserted that the BVA decision was mailed to the appellant at his last known address.... The Secretary was unable to provide the Court with documentation that conclusively established that the proper mailing procedures were followed, but noted that the absence of such evidence is not necessarily indicative that proper procedures were not followed." *Id.* at 63. This statement, too, would likely have been implicated by the appellant's instant motion, because it tends to rebut the Secretary's earlier assertion that proper procedures had been followed after the RO had been made aware of the Ritter St. address and had in fact mailed correspondence to the appellant at that address. Further, because VA had essentially lost the information that the appellant now presents to the Court, the appellant was in the best position to come forward with that information at the time of his prior motion to reinstate this appeal. It is unclear why he did not do so.

As to the majority's holding that "[e]ven if the Court were to apply *Bailey* [,*supra* ] to the facts here, this case would not avail itself of equitable tolling", I concur, but only insofar as that statement is qualified by the Court's "balanc[ing of the considerations set forth in *Bailey* ] against the countervailing concerns of repose and preservation of finality in judicial proceedings", which led to the majority's conclusion that "the concerns of repose and preservation triumph over the application of *Bailey* and preclude this Court from granting a motion to recall its mandate and reinstate the appeal." *Ante* at 337. Accordingly, I would not, as does the majority, *ante* at 336, decide whether, had the appellant presented the arguments made in the instant motion prior to the Court's initial decision in this matter, or even at the time of his prior motion to reinstate his appeal, the

application of *Bailey* would have been indicated.