**THIS VERSION OF THE OPINION REFLECTS THE SEPTEMBER 10, 2013, ERRATA**

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

NO. 12-548(E)

MICHAEL J. GARSOW, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided August 30, 2013)

*Robert V. Chisholm*, of Providence, Rhode Island, was on the brief for the appellant.

*Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Carolyn F. Washington*, Deputy Assistant General Counsel; and *Catherine A. Chase*, all from Washington, D.C., were on the brief for the appellee.

Before KASOLD, *Chief Judge*, and HAGEL and LANCE, *Judges*.

KASOLD, *Chief Judge*, filed the opinion of the Court. LANCE, *Judge*, filed a dissenting opinion.

KASOLD, *Chief Judge*: Before the Court is Michael J. Garsow's May 16, 2012, application pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), for an award of attorney fees and expenses in the amount of $796.26 for 4.7 hours of attorney work. The May 9, 2012, Court order underlying Mr. Garsow's EAJA application granted the parties' joint motion to vacate (JMV) a January 23, 2012, Board of Veterans' Appeals (Board) decision on the understanding that it was ultra vires, and dismissed the appeal. As to the EAJA application, the parties originally agreed that Mr. Garsow was a prevailing party, but the Clerk of the Court perceived that this circumstance presented a novel issue and forwarded it for judicial review. *See* Court's Internal Operating Procedures § XII(b)(1); *see also* U.S. VET. APP. R. 45(g)(9) (stating that the Clerk of the Court is permitted, but not required, to "act on motions and applications, if joint, consented to, or unopposed,

that seek to . . . obtain attorney fees and expenses pursuant to 28 U.S.C. § 2412(d)"). In supplemental briefing, the Secretary reversed his position and argued that Mr. Garsow is not a prevailing party. For the reasons stated below, we hold that, based on the unique facts presented here, Mr. Garsow is not a prevailing party for EAJA purposes and the Court will deny his EAJA application.

## I. BACKGROUND

Because the procedural history of this matter is unusual, we start with a brief background of the underlying action for which this EAJA award is sought. On November 1, 2011, the Board issued a decision that (1) denied Mr. Garsow's claim for disability compensation for bilateral hearing loss, (2) remanded his claim for benefits for an acquired psychiatric disorder and tinnitus, and (3) granted his claim for bilateral peripheral neuropathy of the left and right lower extremities (neuropathy). On January 9, 2012, under docket number 12-0103, Mr. Garsow timely submitted a Notice of Appeal (NOA) from the November 2011 decision. By operation of law, however, our jurisdiction over the appeal was limited to the Board's 2011 denial of Mr. Garsow's claim for benefits for bilateral hearing loss. *See Hibbard v. West*, 13 Vet.App. 546, 548 (2000) (holding that the Court's jurisdiction is limited to the appeal of final Board decisions that are *adverse* to the claimant).

On January 23, 2012, apparently without knowledge that Mr. Garsow had appealed the November 2011 Board decision to the Court, the Board vacated the entire November 2011 Board decision and issued a new decision in its stead.[1] The Board explained that the record upon which the November 2011 decision had been based included documents pertaining to another veteran, which the January 2012 Board determined had affected part of the November 2011 decision. In the new January 2012 decision, the Board's determination with regard Mr. Garsow's claim for benefits for bilateral hearing loss, an acquired psychiatric disorder, and tinnitus remained the same. However, whereas the November 2011 Board granted service connection for Mr. Garsow's neuropathy, the January 2012 Board remanded this issue for further development. Mr. Garsow then

[1] To do so, the Board acted on its own motion under the authority of 38 C.F.R. § 20.904 (2013) ("An appellate decision may be vacated by the [Board] at any time upon request of the appellant or his or her representative, or on the Board's own motion.").

appealed the entire January 2012 Board decision under docket number 12-0548, and the parties filed a joint motion to vacate that decision because, they asserted, the Board lacked jurisdiction to vacate the November 2011 decision while it was on appeal to this Court. *See Garsow v. Shinseki*, No. 12-548 (Parties' Mar. 5, 2012, "Joint Motion to Vacate the Board . . . Decision and Dismiss the Appeal"). On May 9, 2012, the Court, summarily and without qualification, granted the parties' JMV and set aside the entire January 2012 Board decision. On May 16, 2012, Mr. Garsow filed his EAJA application for work on his appeal of the January 2012 Board decision.

The parties' briefing in the EAJA matter, however, raised questions as to the scope of the parties' underlying JMV and the propriety of granting it in full. Specifically, in the JMV, the parties requested vacatur of the entire January 2012 Board decision for lack of jurisdiction, without recognizing that the January 2012 Board's decisions on Mr. Garsow's claims for benefits for acquired psychiatric disorder, tinnitus and neuropathy were within its jurisdiction, because those matters – which were either remanded or granted in the November 2011 Board decision – were not before the Court in Mr. Garsow's appeal of the November 2011 Board decision.[2] *See Hibbard*, *supra*; *see also Breeden v. Principi*, 17 Vet.App. 475, 478 (2004) (stating that a Board remand "does not represent a final decision over which this Court has jurisdiction"). Because it appeared that the JMV and order granting the JMV were overbroad, the matter was returned to the screening judge, who issued an order to show cause why mandate and judgment in the underlying order should not be recalled and the underlying order withdrawn.

In response, the parties informed the Court that on February 28, 2013 – after Mr. Garsow's appeals to the Court had been resolved – the Board *again* vacated the November 2011 grant of benefits for Mr. Garsow's neuropathy, and *again* remanded his claim for benefits for an acquired psychiatric disorder and tinnitus.[3] Moreover, Mr. Garsow filed a Notice of Appeal from that portion of the February 2013 Board decision that vacated the November 2011 grant of benefits for neuropathy, and it has been assigned docket number 13-1259. Because recalling mandate and

---

[2] Notably, the parties ultimately recognized that only that part of the November 2011 Board decision that denied benefits for Mr. Garsow's bilateral hearing loss was on appeal, and, on May 22, 2012, the Court granted the parties' joint motion for remand (JMR) of that matter. *Garsow v. Shinseki*, No. 12-0103 (May 22, 2012, Order).

[3] Like the January 2012 Board decision, the February 2013 Board decision remanded Mr. Garsow's claim for benefits for hearing loss after vacating the grant of that claim.

withdrawing the order granting the JMV would result in two appeals of two Board decisions that both vacate that portion of the November 2011 Board decision that granted Mr. Garsow's claim for benefits for neuropathy – i.e., (1) Mr. Garsow's appeal of the January 2012 Board decision that would be reinstated by withdrawal of the order granting the JMV, and (2) his currently pending appeal of the February 2013 Board decision – the single judge determined that such action would only create confusion and therefore was not warranted. *See Garsow*, No. 12-548 (June 19, 2013, Order at 3 (citing *McNaron v. West*, 12 Vet.App. 334, 336 (1999) ("The power of this Court to recall its mandate 'can be exercised only in extraordinary circumstances . . . . The sparing use of the power demonstrates it is one of last resort, to be held in reserve against grave, unforeseen contingencies.'" (quoting *Calderon v. Thompson*, 523 U.S. 538, 550 (1998)))). We turn now to the EAJA application.

## II. DISCUSSION

Courts are charged with approving EAJA applications, and EAJA fees may be awarded only when the applicant is a prevailing party. *See* 28 U.S.C. § 2412(d)(1)(A), (1)(B), (2)(B); *Comm'r, INS v. Jean*, 496 U.S. 154, 160 (1990) ("In EAJA cases, the *court* first must determine if the applicant is a 'prevailing party' by evaluating the degree of success obtained." (emphasis added)); *see also Scarborough v. Principi*, 541 U.S. 401, 407-08 (2004); *Owens v. Brown*, 10 Vet.App. 65, 66 (1997) ("[I]n order to attain prevailing-party status, a party is required to receive at least some relief on the merits of his claim." (quoting *Sumner v. Principi*, 15 Vet.App. 256, 261 (2001) (en banc) (internal quotation marks omitted))); *e.g., Jason D.W. by Douglas W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205 (5th Cir. 1998) (making a finding on prevailing-party status, even though both parties agree to prevailing-party status); *Swiney v. Gober*, 14 Vet.App. 65, 68 (2000) (despite concession by Secretary of prevailing-party status, the Court sought supplemental briefing and independently determined that appellant had prevailing-party status). Thus, despite the parties' initial agreement on prevailing-party status, and especially since the Secretary reversed his initial position, the Court must determine prevailing-party status as a threshold determination.

In general, to achieve prevailing-party status, a party must receive at least some relief on the merits of his claim rising to the level of an enforceable judgment on the merits or court-ordered

consent decree that materially alters the parties' legal relationship. *Vaughn v. Principi*, 336 F.3d 1351, 1356-57 (Fed. Cir. 2003) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001)). "Minimal relief resembling 'an interlocutory ruling that reverses dismissal for failure to state a claim' or a 'reversal of directed verdict' will not satisfy statutory requirements to achieve prevailing party status." *Id.* at 1357 (quoting *Buckhannon*, 532 U.S. at 605); *Akers v. Nicholson*, 409 F.3d 1356, 1360 (Fed. Cir. 2005) (holding that a remand due to an intervening Court decision did not render the appellant a prevailing party for EAJA purposes); *Halpern v. Principi*, 384 F.3d 1297, 1306 (Fed. Cir. 2004) (finding no prevailing-party status when appeal resulted in a remand with directions to dismiss for lack of jurisdiction).

In asserting prevailing-party status, Mr. Garsow relies in part on *Former Employees of Motorola Ceramic Products v. United States* (*Former Employees*), 336 F.3d 1360 (Fed. Cir. 2003), for the proposition that, although a remand order generally does not confer prevailing-party status, a "remand to an administrative agency is different" because a "court proceeding is treated as a separate proceeding from the administrative proceeding." *See* Appellant's Supplemental Memorandum at 5 (quoting *Former Emps.*, 336 F.3d at 1364-65). Mr. Garsow's reliance, however, is misplaced. *Former Employees* held that remands to administrative agencies are different from traditional remands and *may* constitute relief on the merits if the plaintiff secures a remand *requiring further agency proceedings* "(1) without regard to the outcome of the agency proceedings where there has been no retention of jurisdiction by the court, or (2) when successful in the remand proceedings where there has been a retention of jurisdiction." *Former Emps.*, 336 F.3d at 1365. One glaring difference in Mr. Garsow's case is that his appeal did not result in a remand to the Board (the lower administrative agency); it resulted only in the (1) vacation of the January 2012 Board decision and (2) termination of the appeal. *See Garsow*, No. 12-548 (May 9, 2012, Order at 1-2 ("[I]t is ORDERED that the parties' joint motion to vacate the January 23, 2012, Board decision is granted.") and Parties' Mar. 5, 2012, "Joint Motion to Vacate the Board . . . Decision and Dismiss the Appeal"). The Court's grant of the parties' JMV required no further Agency action and therefore no relief on the merits under *Former Employees*.

We also find *Halpern* to be the more instructive and analogous case. In *Halpern*, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) held that the vacatur of a Board decision

for lack of original jurisdiction and remand for the Board to dismiss the action did not rise to the level of some relief on the merits of the claim sufficient to constitute prevailing-party status under EAJA.  384 F.3d at 1306.   As the Federal Circuit noted, there was no judgment on the merits of the claim; the case was merely remanded for the Board to dismiss the action for lack of jurisdiction.  *Id*. Similarly here, the parties' JMV, and the Court's order granting the JMV, did not address the merits of any part of Mr. Garsow's claim for benefits; it merely presented an agreement that the parties believed the January 2012 Board decision was ultra vires and should be vacated – and vacating the Board decision is all that was granted.  We see no practical difference between the vacatur of a Board decision and remand instructing the Board to dismiss an action for lack of jurisdiction in *Halpern*, and the Court's vacatur of Mr. Garsow's January 2012 Board decision for lack of jurisdiction – in both cases the Board decision at issue was nullified by the Court's actions.  Succinctly stated, as there was no judgment on the merits of the claim or claims at issue in *Halpern*, there was similarly no judgment on the merits of Mr. Garsow's claims here.

We also note generally that "'an interlocutory ruling that reverses a dismissal for failure to state a claim' or a 'reversal of a directed verdict' will not satisfy the statutory requirements to achieve prevailing party status" because each provides only minimal relief and no enforceable judgment on the merits of a claim.  *Vaughn, supra.*  As with reversal of a dismissal for failure to state a claim or reversal of a directed verdict, the vacatur of the January 2012 Board decision provided only minimal relief with no permanent effect on the merits of the underlying claim.  Otherwise stated, the order granting the JMV contained no holding preventing the Board from re-enacting the same merits determinations as those rendered in the January 2012 Board decision.  Indeed, this is demonstrably shown by issuance of the Board's February 2013 decision that *again* vacated its previous grant of benefits for neuropathy.

Mr. Garsow also argues that the Court's vacatur of the January 2012 Board decision de facto reinstated the November 2011 Board decision and its award of service connection for neuropathy. This argument is not persuasive.  Although the Court's vacatur of the entire January 2012 Board decision left in place the November 2011 Board decision awarding him benefits for neuropathy, the Court did not reinstate his award of benefits for his claims; rather, the Court – without comment on the merits of any claim – simply vacated the January 2012 Board decision for lack of jurisdiction,

the precise and only remedy sought by the parties. In other words, the Court did not alter the parties' legal relationship as to whether benefits ultimately were to be awarded for neuropathy. Thus, the Board retained its ability to vacate the award of benefits for neuropathy and remand the claim for further adjudication, and, once the Court rendered a decision on the appeal of the November 2011 Board decision, that is exactly what the Board did when it issued the February 2013 decision.

In light of the foregoing, the Court concludes that Mr. Garsow is not a prevailing party because there was no *material* alteration in the parties' legal relationship, and there was no enforceable judgment on the merits that resulted from the Court's order granting the parties' JMV based on a lack of jurisdiction. *See Vaughn*, *supra*.

### III. CONCLUSION

Accordingly, we hold that Mr. Garsow is not a prevailing party, and his EAJA application is DENIED.

LANCE, *Judge*, dissenting*:* With due respect for my colleagues, as I would hold that the appellant is a prevailing party, I must dissent. To be a prevailing party, and to be brought across the threshold so as to be entitled to "reasonable" attorney fees and expenses, the appellant need only prevail "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (stating that prevailing-party status is a "generous formulation that brings the plaintiff only across the statutory threshold"). This Court has stated that "in order to attain prevailing-party status, a party is required to receive at least some relief on the merits of his claim." *Sumner v. Principi*, 15 Vet.App. 256, 261 (2001) (en banc) (internal quotation marks omitted). This Court has also emphasized that whether an appellant is a prevailing party depends on whether the relief obtained from the Court represents a material alteration in the relationship between the parties on the merits. *Zuberi v. Nicholson*, 19 Vet.App. 541, 547 (2006). *Zuberi* further described this requirement as one that requires the appellant to receive either "(1) the ultimate receipt of a benefits that was sought in bringing the litigation, i.e., the award of a benefit, or (2) a court remand predicated upon administrative error." *Id.* at 544.

This case can be viewed through two distinct lenses, either of which result in a holding that

the appellant is a prevailing party. The most applicable test for this unusual situation is whether nullifying the January 2012 Board decision represents a material alteration in the relationship between the parties on the merits. *Id.* at 547.

First, with respect to the appellant's claim for disability compensation benefits for bilateral hearing loss, it is true that the January 2012 Board decision *again* denied the appellant"s claim, as had the Board previously in November 2011. However, I believe the majority understates the importance of the Court's vacatur. Vacating the January 2012 Board decision in this case was necessary for the underlying appeal of the November 2011 Board decision to be remanded in accordance with the parties' joint motion for partial remand (JMPR).[4] Hence, the nullification of the January 2012 Board decision *was* necessary to the ultimate relief received on the merits of the original appeal. *See Zuberi*, 19 Vet.App. at 547.

Second, as to that aspect of the January 2012 Board decision, which in no uncertain terms "vacated" the November 2011 Board decision "*granting* service connection for peripheral neuropathy of the right and left lower extremities," *Michael J. Garsow*, BVA 08-07-573, at 11 (Jan. 23, 2012) (emphasis added), the parties agreed that the Board's decision was issued without jurisdiction and should be vacated accordingly. *See* March 5, 2012, Joint Motion to Vacate. I would hold that the Court's vacatur of a Board decision that vacates a prior *grant* of benefits, agreed upon by the parties to be issued *ultra vires,* is sufficient for the appellant to be brought across the threshold so as to be entitled to "reasonable" attorney fees and expenses. *See Hensley*, 461 U.S. at 433. While the majority appears to question correctness of the parties—and the Court—in the underlying litigation, *see ante* at 3, that horse has left the barn, and the Court's order granting the parties' joint motion to vacate is the mandate of the Court. *See Hensley*, 461 U.S. at 437 ("A request for attorney's fees should not result in a second major litigation.").

I also disagree with the majority's reliance on *Halpern v. Principi*, 384 F.3d 1297 (Fed. Cir.

---

[4] Indeed, docketed under number 12-103, the underlying appeal involving the November 2011 Board decision reflects that the parties' JMPR, filed on March 5, 2012, was originally granted by the Court on March 9, 2012. However, three days later, the Court issued an order recalling mandate and holding that the March 9, 2012, order was "issued in error and will be revoked." *Garsow v. Shinseki*, U.S. Vet. App. No. 12-0103 (Mar. 12, 2012) (unpublished order). It was then not until *after* the Court issued its May 9, 2012, order vacating the Board's decision on appeal in the instant case, that the Court ultimately issued the order granting the parties' JMPR in the underlying appeal. *See Garsow v. Shinseki*, U.S. Vet.App. No. 12-0103 (May 22, 2012) (unpublished order).

2005), here, as that case is inapposite. Unlike *Halpern,* the Court here did not "merely remand[] this case for the Board to dismiss this action for lack of jurisdiction." *Id.* at 1306. Rather, the Court *vacated* the Board's January 2012 decision, which effectively severed the Board's previous November 2011 award of service connection. In light of this, I cannot endorse the majority's view. The majority provides no explanation for how its conclusion—that "the Court's vacatur of the entire January 2012 Board decision left in place the November 2011 Board decision awarding [the appellant] benefits for neuropathy," *ante* at 6—does not represent a material alteration in the relationship between the parties on the merits. *Zuberi*, 19 Vet.App. at 547. Contrary to the majority's tortured explanation, the Court's vacatur of the January 2012 Board decision resulted in a restoration of the grant of service connection awarded in the November 2011 Board decision.

The majority put much stock in the Board's ability to replicate the findings of the January 2012 Board decision in a *subsequently issued* Board decision that is not before the Court in this case. *Ante* at 6-7. Assuming that the Court could consider such subsequent Agency action in this case, *but see* 38 U.S.C. § 7252(b), the Board's issuance of a *new* decision (exercising its independent authority to vacate a prior Board decision under 38 C.F.R. § 20.904[5]), which reaches the same result, has *no bearing* on whether the appellant is a prevailing party in the instant appeal.

Despite the majority's view that "the vacatur of the January 2012 Board decision *provided only minimal relief with no permanent effect* on the merits of the underlying claim," *ante* at 6 (emphasis added), as the majority plainly recognizes: "whereas the November 2011 Board *granted* service connection for [the appellant']s neuropathy, the January 2012 Board *remanded* this issue for further development," *id.* at 2 (emphasis added). These statements by the majority are irreconcilable, and the relief here was permanent until the Board issued a *new* decision pursuant to § 20.904.

Finally, I note that the majority's holding appears at odds with this Court's caselaw, which has held that a reasons-or-bases remand represents "a material alteration in the relationship between the parties on the merits," regardless of the fact that such a remand may not result in any "permanent" relief. *See Zuberi*, 19 Vet.App. at 546-57 (a remand based on procedural error—such as a reasons-

---

[5] Section 20.904 of title 38, Code of Federal Regulations provides that, under certain circumstances, "[a]n appellate decision may be vacated by the Board . . . at any time upon request of the appellant or his or her representatives, or on the Board's own motion."

or-bases deficiency—is more than just an opportunity for further adjudication; it is a material alteration of the legal relationship between the parties that confers prevailing-party status).  Given that the Court has held that a reasons-or-bases remand satisfies the test for prevailing party status, complete nullification of a Board decision must dictate the same result.

Ultimately, it is clear that the EAJA was meant to allow claimants to challenge unlawful Government actions without being deterred by the costs associated with litigation.  *See Scarborough v. Principi*, 541 U.S. 401, 406 (2004) (citing note following 5 U.S.C. § 504 ("It is the purpose of this title . . . to diminish the deterrent effect of seeking review of, or defending against, governmental action . . . .")).  There is no question that the parties agreed that the Board's decision here was unlawfully issued.  Therefore, this is *exactly* the type of situation where an award is appropriate, as veterans should not be deterred from seeking to nullify such decisions.

Parenthetically, I note that the Secretary initially agreed to pay $796.26 in attorneys fees to the appellant and the parties were "at peace" with one another.  Secretary's May 18, 2012, Response.  Only after extensive delay in this Court, over matters not raised by either of the parties, has this matter reached resolution.

I would award the $796.26 in fees to the appellant as requested, a mere fraction of the costs incurred in the "over processing" of this appeal thru no fault of either party.